George SNYDER, Jr., et al

v.

Joseph C. TITUS.

Civ. A. No. 80–0773–R.

United States District Court,
E. D. Virginia,
Richmond Division.

May 6, 1981.

John R. Coyle, Arlington, Va., Thomas P. McErlean, Washington, D. C., for plaintiffs.

Andrew Wood, Richmond, Va., James R. Klimaski, Washington, D. C., for defendant.

## MEMORANDUM

WARRINER, District Judge.

This action arises under § 502(a)(3) and (f) of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1132(a)(3) and (f), and involves the rationality and legality of the pension trustees' construction of a "break in service" rule. The Trustees of the International Association of Heat and Frost Insulators and Asbestos Workers' Local 24 Pension Fund (Pension Fund) filed this action seeking repayment of pension benefits allegedly improperly paid defendant pensioner from the Pension Fund. The Trustees claim that defendant does not qualify for the benefits paid. They assert that alleged breaks in service from 1954 through 1956 and again in 1958, as determined under the 1959 version of the Pension Plan, render defendant ineligible for benefits. Defendant has counterclaimed for reinstatement of his pension benefits, claiming that the Trustees erroneously terminated payments to him. Defendant argues that his claims were not properly determinable under the 1959 plan but should be decided under the 1976 plan, the version in effect at the time of his application and plaintiffs' ruling thereon in 1978. The action is presently before the Court on cross-motions for summary judgment. The parties have briefed the issues presented and the motions are now ripe for consideration.

### I.

The material facts are not in dispute. The Pension Fund was instituted and organized effective 1 July 1958. Service under a union collective bargaining agreement ("covered employment") prior to 1 July 1958 was considered "past service," and a participant received one year of "past service credit" if he had worked in covered employment for any period of time during any

year prior to 1 July 1958. Service after 1 July 1958 was considered "future service," and "future service credit" was awarded on a fractional basis for the number of hours of covered employment worked each year after 1 July 1958. These appellations have persisted under various amendments to the plan, with one modification: 30 June 1964 is now the cutoff date for "past service credits," as opposed to 30 June 1958. *See* Defendant's Statement of Facts, Exhibit A, at 2. It is the determination of defendant's past service credits, credits earned prior to 1 July 1958, that is the subject of this suit.

Defendant applied for "normal" pension benefits on 1 May 1978. Eligibility for a normal pension is based upon the applicant either having earned 25 years of credited service at any age or having attained age 65 with a minimum of five years credited service. At the time of his application, defendant was 53 years of age and was not disabled. Defendant was thus eligible for a normal retirement pension only if he had earned at least 25 years of credited service.

At their meeting on 27 July 1978, the Trustees approved defendant's pension application. The Trustees' approval was based upon 31 years of credited service, 18.5 years of past service (prior to 1 July 1964) and 12.5 years of future service (subsequent to 30 June 1964). Defendant was thus credited with 29.8 total benefit units, resulting in pension benefits of $739.04 per month. Defendant's eligibility for pension benefits became effective 1 June 1978.

Also at the July 1978 meeting, the Trustees requested that defendant produce Social Security records to verify his past service credits earned prior to 1959. The records confirmed that defendant worked in covered employment within the jurisdiction of Local 24 for the years 1946 through 1953 and for the year 1957. The records also confirmed that the defendant did not work in covered employment within the jurisdiction of Local 24 for the years 1954, 1955, 1956 and 1958. The Social Security records did not contain sufficient information to determine if defendant should receive credit for any years prior to 1946.[1]

In December 1978, the Trustees requested additional information regarding defendant's employment in the trade during the years 1954 through 1958. When defendant was unable to produce additional information about his employment during the relevant years, the Trustees notified defendant that his pension benefits were being withheld pending clarification of his employment during the years in question. The Trustees made four additional requests for clarification without further result. On 6 August 1979 the Trustees determined that defendant was ineligible for pension benefits and therefore demanded the return of all benefits paid to the defendant between June and December 1978, totalling $5,173.28.

The Trustees' decision that defendant was ineligible for pension benefits was based upon their application of the break in service rule found in the original 1959 pension plan. The 1959 break in service rule read as follows:

Break in Service

A period of twelve (12) consecutive calendar quarters during which employment was less than 250 hours in each quarter shall be a break in service which shall cause the cancellation of all credited service, whether past or future, prior to that date.

1. Defendant claims that he worked in covered employment in 1943 at the Pentagon for a company called Nicely Corporation. He claims that he was then drafted into the Army and served from 1943 until 1946, at which time he resumed his trade. Lawrence E. Laurion, Jr., an administrator for the Pension Fund, avers in his affidavit that other participants who have claimed entitlement to past service credit for work with the Nicely Corporation have consistently been denied such credit on the basis that there is no evidence tending to show that the employer ever had a collective bargaining agreement with Local 24. Memorandum in Support of Plaintiffs' Opposition to Defendant's Motion for Summary Judgment, Exhibit I, at 2–3. As these disputed facts are not material to the Court's decision, the Court will not consider them here, nor will the Court address defendant's claim that he had a vested right to retirement benefits for covered employment from 1943 through 1953.

A period of permanent and total disability shall not constitute a break in service.

Since defendant did not work in covered employment for more than 250 hours in any quarter during the years 1954, 1955, 1956 and 1958, the Trustees determined that defendant had incurred a break in service cancelling his past service credits for the years 1946 through 1953 and for the year 1957. As a result of the loss of 13½ years of credited service prior to 1 July 1958, defendant was left with only 17½ years of credited service for work performed after 30 June 1958.[2] For this reason, the Trustees concluded that defendant was ineligible for normal retirement benefits under the 1976 plan.

The Pension Fund plan has been subjected to several revisions since 1959. It was first revised in 1965. Later revisions were adopted in 1971 and 1974. The current revision was adopted in 1976. None of the revisions contained language referring to a pre-1959 break in service.[3] The Trustees contend that since post-1959 versions of the Pension Fund have not addressed the issue of pre-1959 breaks in service, there is a rational basis for their decision to look to the 1959 plan for determining the existence and nature of breaks in service which occurred prior to that date. In his affidavit, Mr. Lawrence E. Laurion, Jr., an administrator of the Pension Fund, avers that the Trustees have consistently taken this position in administering the fund. See Memorandum in Support of Plaintiffs' Opposition to Defendant's Motion for Summary Judgment, Exhibit I, at 1. Mr. Laurion believes that "there may have been between three and five individuals" who have been denied pension benefits as a result of such inter-

pretation over the years. The Trustees submit that in so interpreting the Pension Fund, they have not acted arbitrarily or capriciously, but rather have acted in keeping with their consistent interpretation of the original language of the plan, though recognizing the fact that the language was not incorporated in any post-1959 version. Defendant asks the Court to confirm this practice as being authorized by the Pension Fund.

In his counterclaim defendant claims that the Trustees erroneously denied him pension benefits on the basis of the break in service rule under the 1959 plan. Defendant contends that the 1976 version of the plan, which was in effect at the time of defendant's application in 1978 and also in effect at the time his application was ruled on, is controlling. The 1976 break in service rule reads in pertinent part as follows:

*Break in Service*

(A) June 30, 1976

All Credited Service and Benefit Units accrued to date, both past and future, to which a Covered Employee is entitled shall be cancelled when the Employee fails to earn any future service credit for three consecutive Plan years after July 1, 1958, subject however to the exceptions set forth in Paragraph 5(B) below.

(B) After July, 1976

If a Covered Employee has a break in service before he earned vested status as described in Paragraph 6 below, such break in service shall have the effect of cancelling status as a Participant under this Plan and shall cancel previously earned Pension Credits.

A participant shall incur an initial One Year Break in Service for any Plan

---

**2.** In the Complaint the Trustees allege that "all past service accumulated by defendant prior to 1958 was cancelled [as a result of the breaks in service in 1954, 1955, 1956 and 1958], leaving defendant with eighteen years of Credited Service from July 1, 1958 until the date of defendant's last employment in March, 1978." Complaint, assembled from ¶ 11. In their briefs, the parties have ignored the alleged 1958 break in service and have concentrated on only the alleged break in service from 1954 through 1956.

There is, however, no indication that the Trustees intended to waive their allegation with respect to the 1958 break in service and its consequential cancellation of defendant's credited service for 1957. Accordingly, the Court will consider both alleged breaks in service throughout the opinion.

**3.** *See* quoted language from 1959 version in text, *supra*, at 3.

year during which he fails to attain 220 Hours of Service, thereafter he incurs additional one year breaks in service for each Plan year in which he fails to attain 220 Hours of Service.

An Employee incurs a "break in service" in the event he accumulates consecutive one year breaks in service that equal or exceed his years of credited service, but not prior to three one year breaks in service.

Since the 1976 plan is silent[4] on pre-1959 breaks in service, defendant contends that his absence from covered employment in 1954, 1955, 1956 and 1958 does not constitute a "break in service," and that he is entitled to an aggregate of 9 years of past service credits for covered employment in the trade prior to 1 July 1958. When these past service credits are included with defendant's undisputed years of credited service, defendant contends that he has 26½ years of credited service, entitling him to a normal retirement pension under the 1976 plan.

II.

In support of his position that the 1976 rather than the 1959 version of the Plan is controlling in this case, defendant has cited the Court to cases which defendant claims stand for the general rule that the version of the pension plan in effect at the time of retirement, or at the time of entitlement to retirement benefits, is binding upon trustees of retirement plans and courts alike. Cited were *Agro v. Joint Plumbing Indus-*try *Board*, 623 F.2d 207, 210–211 (2d Cir. 1980); *Hicks v. Pacific Maritime Ass'n*, 567 F.2d 355, 358 (9th Cir. 1978); and *Taylor v. I.T.U. Negotiated Pension Plan*, 463 F.Supp. 1255, 1257–59 (D.Md.1979). The Trustees concede the existence of such a general rule of construction, but contend that the rule is inapposite here because the 1976 plan does not address the issue of pre-1959 breaks in service. Thus, the Trustees claim it is reasonable to look to the provisions of the 1959 plan to fill this "gap."

▉ A review of the above cases reveals that if they stand for any general rule at all, it is this: When there has been an amendment to a plan, courts tend to look to the pension plan in effect at the time of the participant's entitlement to benefits, and will apply those provisions absent a showing that the effect of such an application would amount to an arbitrary or capricious deprivation. Since defendant does not claim that the Trustees acted arbitrarily or capriciously in amending the Pension Fund, but rather that they arbitrarily and capriciously referred to a prior version of the plan in computing his entitlement, the rule developed by the cases cited is not extremely helpful to the Court here. Nevertheless, these cases do lend support to a rule of construction in pension claims cases that the version of the plan in effect at the time an employee's application is filed or is ruled upon is controlling in determining entitlements.[5] Surprisingly, the Court has been

4. It should be noted at the outset that the text refers to the 1976 plan as being "silent," or as having a "gap" or an "omission" with respect to pre-1959 breaks in service simply because the parties have used these or like denominations in presenting the issues to the Court. But as will be made clear in Part III.A., *infra*, the Court does not view the 1976 plan as being "silent," or as having a "gap" or an "omission" with respect to pre-1959 breaks in service. The 1976 break in service rule explicitly defines a break in service as the failure to earn any future service credit for three consecutive plan years *after July 1, 1958*. *See* text of rule, *supra*, at 5. By defining a break in service as occurring upon a specified disruption after 1 July 1958, the rule clearly denotes that there is no such concept as a pre-1959 break in service. The concept is simply defined out of existence.

Although the Court thus views the terms "silence," "gap," "omission," and the like, with respect to the 1976 plan as being misnomers, the Court uses them nevertheless so that the issues presented by the parties can be squarely met by the Court.

5. It is not necessary for a decision in this case for the Court to decide whether the time of the filing of the application or the time of the ruling thereon is the operative time for determining which version of a pension plan is controlling. Reference to either time would make no difference in this case. The Court recognizes, however, that in a given case reference to one time or the other would be significant. An analogy to rules of statutory construction would indicate that, if the plan were amended after the

unable to find a case reaching such a conclusion and expressly stating such an obviously logical and practical rule.[6] Because such a rule seems the only appropriate one, the Court adopts it here and will be guided by it in deciding this case.

### III.

■ Under this rule, the Court's inquiry is twofold. First, the Court must decide whether the Trustees' interpretation was made rationally and in good faith, or was made arbitrarily and capriciously. *Seafarers Pension Plan v. Sturgis*, 630 F.2d 218, 221 (4th Cir. 1980); *Ponce v. Construction Laborers Pension Trust*, 628 F.2d 537, 541–42 (9th Cir. 1980); *Wardle v. Central States, Southeast and Southwest Areas Pension Fund*, 627 F.2d 820, 823–24 (7th Cir. 1980); *Bayles v. Central States, Southeast and Southwest Areas Pension Fund*, 602 F.2d 97, 99–100 (5th Cir. 1979); *Bueneman v. Central States, Southeast and Southwest Areas Pension Fund*, 572 F.2d 1208, 1209 (8th Cir. 1978); *Riley v. MEBA Pension Trust*, 570 F.2d 406, 410 (2nd Cir. 1977). This rational nexus test was apparently adopted in pre-ERISA cases under § 302(c)(5) of the Taft-Hartley Act, 29 U.S.C. § 186(c)(5), and is now utilized in cases under ERISA. See generally *Bayles*, supra, at 99–100, 100 n.3; *Bueneman*, supra, at 1209, 1209 n.3; *Morgan v. Laborers Pension Trust Fund for N. Cal.*, 433 F.Supp. 518, 524–25 (N.D.Cal.1977). Under this test it is not for the Court to substitute its judgment for that of the Trustees, *Seafarers Pension Plan v. Sturgis*, supra, at 221; *Ponce*, supra, at 542; *Wilson v. Board of Trustees*, 564 F.2d 1299, 1302 (9th Cir. 1977), nor is it the function of the Court to choose between several reasonable interpretations of a plan, *Ponce*, supra, at 542; *Roark v. Lewis*, 401 F.2d 425, 429 (D.C.Cir. 1968).

The Court is simply to determine whether the Trustees have acted in a rational and reasonable manner.

The Court's second inquiry is whether the Trustees' interpretation is in compliance with the substantive provisions of ERISA, namely the provisions regarding participation and vesting. 29 U.S.C. §§ 1051–1061. See *Winer v. Edison Bros. Stores Pension Plan*, 593 F.2d 307, 312 (8th Cir. 1979); *Riley v. MEBA Pension Trust*, supra, at 410.

### A.

■ With regard to the rationality of the Trustees' interpretation of the Pension Fund, an appropriate starting place is with the Trustees' contention that the 1976 plan is completely silent on pre-1959 breaks in service. The 1976 plan is not silent on breaks in service. The concept is clearly defined and its effect on pension eligibility is specifically set forth. Article III, paragraph 5(A), of the 1976 plan explicitly defines a break in service as the failure "to earn any future service credit for three consecutive plan years *after* July 1, 1958." (Emphasis added). As defined, a pre-1959 hiatus in work in the trade does not come within the plan provision as a break in service. A break in service occurs only upon a disruption in covered employment after 1 July 1958. Pre-1959 breaks in service have thus been specifically defined out of existence. The concept simply does not exist under this 1976 plan. See note 4, supra.

■ Moreover, nothing in the 1976 plan refers to the Trustees to the 1959 plan for determination of pre-1959 service credits. Under such circumstances the Court is of the opinion that the alleged silence in the 1976 plan on pre-1959 breaks in service weighs heavily against the Trustees' inter-

filing of the application, the amended version, or rather the version in effect at the time of the Trustees' ruling, would be controlling. See *Vandenbark v. Owens-Illinois Glass Co.*, 311 U.S. 538, 61 S.Ct. 347, 85 L.Ed. 327 (1941). See generally 32 Am.Jur.2d Federal Practice and Procedure § 302 (1967). Nevertheless, if reference to the amended version would operate

arbitrarily and capriciously to deprive the pensioner of benefits, such reference to the amended version would be impermissible. E. g., *Danti v. Lewis*, 312 F.2d 345, 349 (D.C.Cir. 1962).

6. For a case approaching a statement of this general rule, see *Danti v. Lewis*, 312 F.2d 345, 349 (D.C.Cir. 1962).

pretation of the 1976 plan. This is particularly true where the incorporation of such a provision relating to pre-1959 breaks in service could have been easily accomplished if that had been the intention of the drafters of the 1976 plan. Not only was no such provision incorporated into the 1976 plan, none was ever incorporated in any of the interim versions of the Pension Fund since 1959.[7]

If the Trustees' interpretation of the plan were correct—that alleged omissions in current versions of the Pension Fund are to be filled by reference to relevant prior versions of the plan—participants and Trustees alike would be required to read and understand the current as well as all prior versions of the plan in the event an interested party claims a "gap" exists in the effective version. Such a result would not only make access to any particular rule cumbersome, but it would also raise serious problems with the adequacy of notice of plan provisions to the participants. The participants would have no way of apprising themselves of the Trustees' interpretation of plan provisions, such as the break in service rule in this case, except by personal inquiry of the Trustees themselves. Of course, such an inquiry would be unlikely in a case like this where there is no lacuna apparent on the face of the 1976 plan.[8]

The change wrought in the definition of a break in service may be grounded in a practical situation not apparent to the present Trustees. The Trustees have informed the Court that with the adoption of the original plan in 1959, the Trustees thereupon began keeping records by which the Trustees could readily verify covered employment based on the reports of the employers who contribute to the plan on behalf of their employees. Prior to 1959 no such records were maintained. As a result,

the Trustees have had to rely on Social Security earnings records or their own personal knowledge to verify covered employment before the effective date of the plan. From this averment, the Court feels justified in speculating that one reason for the alleged omission would be the lack of readily verifiable, as well as reliable, records of covered employment prior to 1959. But such speculation as to a reason for the revision is not necessary to a decision. In the absence of any indication of the intent of the drafters with regard to pre-1959 breaks in service, the rational interpretation is that the failure expressly to mention such breaks in service in the 1976 plan, and in all interim plans since 1959, was intentional, not unintentional as the Trustees suggest. There has been no reason advanced for reading a latent ambiguity into an otherwise complete and unambiguous break in service rule.

■ By its terms, then, the 1976 plan does not consider any pre-1959 employment interruptions as being breaks in service. Despite this, the Trustees argue that their application of the 1959 rule is rational because they have been consistent in this practice. A consistent pattern of interpretation is an indicium of rationality. *Gordon v. ILWU–PMA Benefit Funds,* 616 F.2d 433, 440 (9th Cir. 1980); *Bayles v. Central States, Southeast and Southwest Areas Pension Fund,* supra, at 100; *Bueneman v. Central States, Southeast and Southwest Areas Pension Fund,* supra, at 410. However, there should be some rational nexus between the consistent interpretation and the policy to be furthered thereby. The Trustees have not proffered any particular policy to be furthered by their consistent practice of looking to the 1959 plan for determination of pre-1959 breaks in service. The only general policy behind the practice

---

7. As aforementioned, the break in service rule in the original 1959 version of the plan was amended in 1965, 1971, 1974 and finally in 1976.

8. Defendant has not challenged the adequacy of notice in this case presumably because the Pension Fund did not become effective until after his alleged breaks in service. Cf. *Ponce v.*

*Construction Laborers Pension Trust,* supra, at 540, 545 (claim of lack of notice under similar circumstances was rejected). The Court merely raises the issue of notice as it suggests the irrationality of a policy and practice of relying on provisions in a predecessor plan where the effective plan appears to dispose of the issue.

suggested to the Court is the protection of the financial integrity of the plan. Of course, any denial of pension benefits promotes the financial integrity of the plan but that certainly does not make the denial rational. In this regard, the Court has not been presented with any evidence, or claim that evidence exists, to indicate that an adverse ruling in this case will affect the financial stability of the Pension Fund. Indeed, in his affidavit, Mr. Laurion stated that at the most only five other participants have been denied pension benefits as a result of the application of the 1959 break in service rule.[9] Thus, the Trustees' consistent practice of referring to the 1959 plan in these cases has not substantially preserved the financial integrity of the plan, nor is there any evidence to support the conclusion that an adverse ruling here may substantially impair the vitality of the plan. Furthermore, the consistency of the interpretation does not mollify the fact that the interpretation is irrational as demonstrated above. Being consistently wrong can hardly be sanctioned as right.

■ Even if the Court agreed that there is an unintentional "gap" in the 1976 plan and that the Trustees made a rational decision in attempting to fill that gap, it is apparent that their reference to the 1959 break in service rule conflicts with a provision in the 1976 plan. Article I, the definitional section of the 1976 plan, provides in paragraph 19:

"An employee incurs a "break in service" in the event he accumulates consecutive one year breaks in service that equal or exceed his years of credited service, but not prior to 3 consecutive one year breaks in service."

Under paragraph 19, an employee who, for example, has one year of credited service followed by more than three consecutive one year breaks in service, will have the one

year of credited service cancelled. If, however, the employee has, for instance, five years of credited service, he must accumulate five consecutive one year breaks in service before cancellation of the five years of credited service would occur. Applying paragraph 19 to defendant, since he accumulated eight years of credited service from 1946 through 1953, he would have those years cancelled only if he incurred an eight year break in service. Under the Trustees' application of the 1959 break in service rule to defendant, all eight years of credited service from 1946 through 1953 were cancelled as a result of defendant working less than 250 hours in each quarter of any given year during the 1954 through 1956 period. The same application apparently would be made by the Trustees with respect to defendant's credited service in 1957 as a result of the one year break in service in 1958, assuming that the credited service prior to 1957 was cancelled.

The definition of "break in service" in the 1959 plan thus is in conflict with the definition in Article I, paragraph 19, of the 1976 plan. Without authorization under the plan, the Trustees have arbitrarily decided to apply the harsher rule. If the 1976 plan expressly provided for such an inconsistency, this would be a different matter.[10] Cf. *Honeycutt v. Board of Trustees*, 468 F.Supp. 1213, 1214–15 (C.D.Cal.1979) (specific rule in plan for breaks in service prior to inception of plan). But where the 1976 plan is claimed to be silent on pre-1959 breaks in service, the Court cannot find that the Trustees acted rationally in applying a stricter break in service rule to defendant's past service credits than that contained in Article I, paragraph 19, of the 1976 plan.

■ The Court has not found another case holding that the application of a break in service rule was arbitrary and capricious

9. The Court leaves aside the question of whether rulings on only "three to five" claims over a score or more years establishes any consistent pattern.

10. For example, the 1976 plan provides a different break in service rule for the period between 1958 and 1976. Under Article III, Paragraph 5(A), when an employee accumulates three consecutive one-year breaks in service after 1 July 1958, he forfeits all benefits accrued to date.

under facts similar to those presented here. Generally, courts have reached this result only where the break in service was involuntary, e. g., *Knauss v. Gorman*, 583 F.2d 82, 90, 90 n.30 (3rd Cir. 1978); *Lee v. Nesbitt*, 453 F.2d 1309, 1312, 1312 n.3 (9th Cir. 1972), or where the employee had no notice of the break in service rule, e. g., *Burroughs v. Board of Trustees*, 542 F.2d 1128, 1131 (9th Cir. 1976), cert. denied, 429 U.S. 1096, 97 S.Ct. 1113, 51 L.Ed.2d 543 (1977). See generally *Vermeulen v. Central States, Southeast and Southwest Areas Pension Fund*, 490 F.Supp. 234, 238 (M.D.N.C.1980). Nevertheless, the Court concludes that the Trustees' interpretation of the break in service rule here is just as arbitrary and capricious as in those cases. The Trustees have read an ambiguity into the pension plan that is not apparent on the face of the plan, and for which no justification has been given. The Court cannot permit such an unfounded interpretation to deprive an employee of his benefits where he has no way of anticipating such a deprivation upon reading the clear language in the plan in effect at the time of his application. A contrary result, the Court believes, would open the door to a shell game in the administration of pension plans, frought with potential abuse and caprice.

The Court thus holds that a denial of benefits to defendant is, under the plan, arbitrary and capricious, and contrary to the provisions of the pertinent plan.

### B.

The Court's inquiry turns now to whether the Trustees' interpretation of the plan is in compliance with the requirements of ERISA. 28 U.S.C. § 1053(b)(3)(D) reads as follows:

> For purposes of paragraph (1) [relating to the computation of the nonforfeitable percentage of credited service under 29 U.S.C. § 1053(a)(2)], in the case of a participant who, under the plan, does not have any nonforfeitable right to an accrued benefit derived from employer contributions, years of service before any 1-year break in service shall not be required to be taken into account if the number of consecutive 1-year breaks in service equals or exceeds the aggregate number of such years of service prior to such break. Such aggregate number of years of service before such break shall be deemed not to include any years of service not required to be taken into account under this subparagraph by reason of any prior break in service.

This section is relevant here because defendant did not have a nonforfeitable right to retirement benefits under Article III, Paragraph 6, of the 1976 plan at the time of his alleged break in service from 1954 through 1956 and again in 1958. It appears to the Court that the Trustees' interpretation of the break in service rule in the 1959 plan would be violative of § 1053(b)(3)(D) for the same reason that their interpretation conflicts with Article I, paragraph 19, of the 1976 plan, as discussed above. The only issue for the Court is whether Section 1053(b)(3)(D) is applicable to this case.

■ 29 U.S.C. § 1061(b)(2) provides that the provisions in ERISA relating to participation and vesting, 29 U.S.C. §§ 1051–61, "in the case of a plan in existence on January 1, 1974, ... shall apply in the case of plan years beginning after December 31, 1975." The Court believes that the intent of this subsection is to make the vesting rules applicable to decisions to deny benefits made after the effective date of ERISA. This interpretation of § 1061(b)(2) comports with the legislative history found in the House Conference Report:

> Generally, the vesting rules of the conference substitute are to apply to all accrued benefits, including those which accrued before the effective date of the provisions (subject, however, to the break-in-service rules discussed below).

H.R.Conf.Rep.No. 93–1280, 93d Cong., 2nd Sess. 275, *reprinted in* [1974] U.S.Code Cong. & Admin.News 4639, 5038, 5056 (hereinafter as Conference Report). Since the Trustees determined that defendant was ineligible for pension benefits in August 1979, after the effective date of ERISA, the statutory vesting provisions are generally applicable to that determination.

The Court does not believe that its interpretation of § 1061(b)(2) runs afoul of the Fourth Circuit's holding in *Martin v. Bankers Trust Co.*, 565 F.2d 1276 (4th Cir. 1977) (interpreting 29 U.S.C. § 1144(b)(1)). There the court held that ERISA's substantive provisions were not applicable where the employee's employment relationship terminated, and his application for benefits was filed prior to the effective date of ERISA. Id. at 1278–79. The situation here is more like that in *Winer v. Edison Brothers Stores Pension Plan*, 593 F.2d 307 (8th Cir. 1979) (involving the application of a "bad boy" provision). In *Winer* the Eighth Circuit ruled that the pension plan was subject to ERISA where the denial of benefits was based upon pre-ERISA acts, but where plaintiffs had remained in covered employment and had applied for benefits after the effective date of ERISA. Id. at 312–13. Cf. *Fremont v. McGraw-Edison Co.*, 606 F.2d 752, 755, 757–58 (7th Cir. 1979), cert. denied, 445 U.S. 951, 100 S.Ct. 1599, 63 L.Ed.2d 786 (1980) (employee left covered employment and suffered break in service before ERISA's effective date).

Judge Ward, in *Vermeulen v. Central States, Southeast and Southwest Areas Pension Fund*, 490 F.Supp. 234 (M.D.N.C. 1980) (dictum) (employee left covered employment and suffered a break in service prior to ERISA's effective date), considered *Winer's* impact on *Martin*. This Court respectfully disagrees with his conclusion. Judge Ward said:

> the effect of the Winer holding—that the employee can control the applicability of ERISA by delaying his request for benefits—is contrary to the rule established by the Fourth Circuit in *Martin*. 565 F.2d at 1278.

Id. at 237. The Fourth Circuit did say in *Martin* that 29 U.S.C. § 1144(b)(1)[11] limited federal jurisdiction over a pension claim "based upon events which occurred even before ERISA had been signed into law." *Martin*, supra, at 1278. See *Vermeulen*, supra, 236–37. The determinative fact in *Martin* was that *all* events had occurred prior to the effective date of ERISA. Here, as in *Winer*, only the factual basis relied upon for the denial of benefits occurred prior to ERISA's effective date. The events which necessitated this lawsuit —defendant's continuation in covered employment, his application for benefits, and the Trustees' denial thereof—all occurred after the effective date of ERISA. This is not a situation of an employee controlling "the applicability of ERISA by delaying his request for benefits." *Vermeulen*, supra, at 237. There simply was no basis for this action until these events happened. See *Winer*, supra, at 313–14. The Court does not read *Martin* as barring the application of ERISA in such cases.

■ This does not end the matter, however. 29 U.S.C. § 1053(b)(1) provides in pertinent part that in computing the nonforfeitable percentage of service under 29 U.S.C. § 1053(a)(2), all of an employee's years of service in covered employment shall be taken into account, except that the Trustees may disregard "years of service before this part [29 U.S.C. §§ 1051–1061] first applies to the plan if such service would have been disregarded under the rules of the plan with regard to breaks in service, as in effect on the applicable date." 29 U.S.C. § 1053(b)(1)(F). As noted above in the Conference Report, the vesting rules of ERISA were intended to apply to all accrued benefits, "(subject, however, to the break-in-service rules discussed below)." Conference Report, supra, at 5056. With respect to break in service rules, the Conference Report specifically provides:

> For years beginning prior to the effective date of the vesting provisions, a plan may

11. 29 U.S.C. § 1144(a) provides in pertinent part:

> Except as provided in subsection (b) of this section, the provisions of [ERISA] . . . shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan. . . .

Subsection (b)(1) provides:
> This section shall not apply with respect to any cause of action which arose, or any act or omission which occurred, before January 1, 1975.

apply the break-in-service rules provided under the plan as in effect from time to time.

Conference Report, supra, at 5052. In *Ponce v. Construction Laborers Pension Trust*, 628 F.2d 537, 541 (9th Cir. 1980), the Court stated in dictum that

> ERISA specifically permits a pension plan to give effect to a break in service that occurred prior to January 1, 1976. See 29 U.S.C. § 1053(b)(1)(C); 29 U.S.C. § 1053(b)(1)(F). See, e. g., *Wilson* [564 F.2d 1299, 1302 (9th Cir. 1977)].

See also *Knauss v. Gorman*, 583 F.2d 82, 89 n.26 (3d Cir. 1978); *Daniel v. International Brotherhood of Teamsters*, 561 F.2d 1223, 1249 (7th Cir. 1977, rev'd on other grounds, 439 U.S. 551, 99 S.Ct. 790, 58 L.Ed.2d 808 (1979)).

■■■ There apparently are no cases specifically applying § 1053(b)(1)(F). Writing then on virtually a clean slate, the Court concludes that nothing in the language of § 1053(b)(1)(F), in the Conference Report, nor in the cases above cited, prohibits a plan from *expressly* providing that a break in service in years prior to the effective date of ERISA shall be governed by the rule in effect at the time of the alleged hiatus from covered employment. Indeed, the Court believes that it was the intent of Congress in § 1053(b)(1)(F) to permit the adoption of such express provisions in post-ERISA pension plans. The Court does not believe that Congress intended to permit this in the manner attempted by the Trustees here—by positing that a gap exists and then filling the gap by interpretation harkening back to a pre-ERISA plan.[12] The break in service rule must be expressly stated so that there is no room for an arbitrary and capricious interpretation as to which rule governs a particular period of employment. Otherwise, trustees would be able, as in this case, to dig up break in service rules from old and discarded plans to deny pension applications, thus disappointing the reasonable expectations of pensioners. This clearly would be contrary to the express policy of Congress:

> to protect interstate commerce and the interests of participants in employee benefit plans and their beneficiaries, by requiring the disclosure and reporting to participants and beneficiaries of financial and other information with respect thereto, by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts.

29 U.S.C. § 1001(b). See also 29 U.S.C. § 1104(a)(1).

Because the 1976 plan does not expressly provide that pre-1959 breaks in service shall be governed by the rule in the 1959 plan, the Court concludes that § 1053(b)(1)(F) does not permit the Trustees to disregard defendant's years of covered employment prior to 1954 and in 1957 under their interpretation of the 1959 break in service rule. Furthermore, the Court concludes that a rule for breaks in service prior to 1959, if the 1976 plan admits to such an interpretation at all, can be no more stringent than that in 29 U.S.C. § 1053(b)(3)(D), requiring parity between the break in service and the years of covered employment before those years are cancelled. As the Court indicated above, the Trustees' application of the 1959

---

12. At best the Trustees could only argue that § 1053(b)(1)(F) means that trustees may apply the pension plan in effect at the time ERISA became "applicable" in determining pre-ERISA breaks in service, by reading the subparagraph thus: pension trustees may disregard years of service before ERISA *"first applies* if such service would have been disregarded under the rules of the plan with regard to breaks in service, *as in effect on the applicable date* [of ERISA]." 29 U.S.C. § 1053(b)(1)(F) (emphasis added). Admittedly, (b)(1)(F) is ambiguous. But when qualified by the language in the Con-

ference Report that for years before the effective date of ERISA, "a plan may apply the break-in-service rules provided under the plan *as in effect from time to time* . . . .," Conference Report, supra, at 5052, the Court believes that such an interpretation of (b)(1)(F) would be mistaken. Indeed, the issue is purely academic because the Trustees are in no better position under the 1974 plan, which was in effect at the time ERISA became law. The 1974 plan, like the 1976 plan, makes no mention of a pre-1959 break in service.

rule is violative of § 1053(b)(3)(D) for the same reason that it conflicts with Article I, paragraph 19, of the 1976 plan.

### IV.

In summary, the Court finds that the Trustees' application of the 1959 break in service rule to defendant was arbitrary and capricious where the 1976 plan was effective at the time of the ruling on defendant's application for pension benefits and where the 1976 plan did not specifically refer the Trustees to the 1959 rule for determination of such alleged breaks in service. Alternatively, even if some interpretation of the 1976 plan was required with respect to pre-1959 breaks in service, the Court believes that a rule for that period could be no stricter than the definition of a break in service found in Article I, paragraph 19, of the 1976 plan, nor stricter than the "rule of parity" in § 1053(b)(3)(D). Finally, the Trustees have not presented the Court with any evidence that their interpretation of the break in service rules is required to preserve the financial integrity of the Pension Fund. That the Trustees have consistently interpreted the break in service rules in the fashion contended for by them is not, in the Court's opinion, sufficient to discount the other factors.

Accordingly, defendant's motion for summary judgment is GRANTED and the Trustees' motion for summary judgment is DENIED. Because the Court finds for defendant for the reasons stated, it is unnecessary to address defendant's claim that the Trustees are estopped from recovering benefits paid to him.

An appropriate order shall issue.