Ronald M. BUDWIG, Plaintiff,

v.

NATELSON'S, INC. PROFIT SHARING RETIREMENT PLAN, Defendant.

No. Civ. 81–0–24.

United States District Court,
D. Nebraska.

Oct. 18, 1982.

Arnold J. Stern, and Seymour Katz, Omaha, Neb., for plaintiff.

Frederick S. Cassman, Omaha, Neb., for defendant.

## MEMORANDUM OPINION

SCHATZ, District Judge.

### INTRODUCTION

This action arises under Section 502(a)(3), (e), and (f) of the Employee Retirement Income Security Act of 1974 (hereafter ERISA), 29 U.S.C.A. § 1132(a)(3), (e), and (f). The plaintiff, Ronald Budwig (hereafter Budwig) brought this action to appeal the decisions of the Trustee of Natelson's, Inc. of Omaha (hereafter Natelson's) Profit Sharing Retirement Plan with respect to the allocation of benefits to him upon his termination of employment. Trial was had to the Court, sitting without a jury, on August 9, 1982. This memorandum opinion incorporates the Court's findings of fact and conclusions of law as required by Fed.R.Civ.P. 52(a). Upon consideration of the record, the Court concludes that the Trustee acted in a non-arbitrary and noncapricious manner, consistent with the provisions of ERISA, with respect to Budwig's benefits, and that judgment should be entered for the defendant.

The material facts are not in dispute and many were stipulated by the parties at a pretrial conference.

Budwig, a resident of Omaha, Nebraska, became employed by Natelson's on November 13, 1967, and his employment continued until he voluntarily terminated his employment effective June 30, 1977. During said period, Natelson's maintained a retirement profit sharing plan for its eligible employees. The Plan consisted, at various times, of the following documents as hereafter designated: (1) "Original Plan" adopted November 1, 1964, and effective December 1, 1964; (2) "First Amendment" to the Original Plan dated August 30, 1974, and effective February 1, 1974; (3) "ERISA Plan" which is the second amendment to the Original Plan dated February 1, 1976, and effective February 1, 1976; (4) "Amendment 1" to the ERISA Plan dated September 28, 1977, and effective February 1, 1976; and (5) "Amendment 2" of the ERISA Plan which became effective February 1, 1977. First Northwestern Trust

Company of Nebraska, Omaha, Nebraska, is the duly appointed, qualified and acting trustee of Natelson's Profit Sharing Retirement Plan.

During each of the Trust Years which ended on January 31 of 1969, 1970, 1971, 1972 and 1973, Budwig was credited with at least one thousand (1,000) hours of service as defined in ERISA. In addition, during the Plan Years of 1974, 1975, 1976 and 1977, Budwig was credited with at least one thousand (1,000) hours of service as defined in ERISA.

Contributions to the Plan for the benefit of Budwig were made by Natelson's for the Trust Years which ended on the 31st day of January, 1970, 1971, 1972, 1973, 1974, 1975, 1976 and 1977. The amounts of these contributions were as follows:

| Trust Year Ended | Amount |
| --- | --- |
| January 31, 1970 | $2,769.15 |
| January 31, 1971 | 2,916.34 |
| January 31, 1972 | 2,600.00 |
| January 31, 1973 | 3,202.93 |
| January 31, 1974 | 3,596.96 |
| January 31, 1975 | 3,831.93 |
| January 31, 1976 | 4,832.75 |
| January 31, 1977 | 5,282.67 |

Budwig voluntarily terminated his employment effective June 30, 1977. No contribution was made to the Plan for Budwig's benefit for the Trust Year which ended January 31, 1978.

Pursuant to the provisions of the ERISA Plan, on or about February 27, 1978, Budwig submitted his written claim to the Trustee. Budwig maintained that he was entitled to a sixty per cent (60%) vested equity based on the terms of the Original Plan and that he was also entitled to an allocation of Natelson's contribution to the Plan for the Trust Year which ended January 31, 1978, because he had worked more than one thousand hours in 1977. On March 6, 1978, the Trustee determined that Budwig was entitled to a fifty per cent (50%) vested position and not a sixty per cent (60%) vested position. The Trustee calculated Budwig's vested equity under the terms of both the Original Plan which

was in effect when Budwig commenced his participation in the Plan and also the ERISA Plan which was in effect when Budwig submitted his claim. The Trustee concluded that under both plans Budwig was entitled to the same amount. The Trustee also determined that Budwig was not entitled to an allocation of Natelson's contribution for the Trust Year which ended January 31, 1978. The Trustee stated: "that the Plan expressly provides that allocations are to be made only among those persons who are participants on January 31 of the year in question." The Trustee reasoned that since Budwig left the employ of Natelson's in June of 1977, he was not a "participant" on January 31, 1978, and therefore was not entitled to an allocation for that year.

Soon thereafter, Budwig amended his claim to request an eighty per cent (80%) equity and repeated his request for an allocation of Natelson's contributions for the Trust Year ending January 31, 1978. The amended claim was denied by the Trustee on March 17, 1978, for the same reasons as were articulated in the earlier letter.

A year later a second amended claim for benefits was submitted by Budwig, in which he repeated his two earlier requests and added a previously unmentioned third. Budwig sought the life insurance policies on his life held by the Trustee at the date of his termination, June 30, 1977, and requested that they be assigned to him or in lieu thereof the cash value at that time be surrendered to him. This third claim was based on representations allegedly made to Budwig during the course of preliminary talks prior to his employment, that the cash values of the group policy would be his if he left the company. On August 10, 1979, the Trustee denied the three requests of Budwig's second amended claim. As to the first two requests, the Trustee referred to his previous letters and as to the insurance request, the Trustee informed Budwig that the group policy had been converted to reduced paid up insurance in the amount of

$11,683, with a cash value as of February 28, 1979, of $5,111.20.[1]

Following the procedure established by the ERISA Plan, Budwig thereafter submitted to the Trustee a written appeal reiterating the three claims. A conference was held on September 24, 1979. The Trustee rejected all three claims and affirmed his earlier decisions. On January 14, 1981, Budwig commenced this suit. The issues to be determined by this Court are:

1) Whether Budwig is entitled to a vested equity in an amount greater than fifty per cent (50%) as determined by the Trustee;

2) Whether the Trustee is required to make an allocation for the benefit of Budwig out of the contribution made by Natelson's to the Plan for the Trust Year which ended January 31, 1978;

3) Whether the Trustee is required to make immediate payment to Budwig of the cash value of the life insurance maintained by the Trustee on the life of Budwig.

## CONCLUSIONS OF LAW

### I.  Standard of Review

■ This Court adopts the view that the standard of review in pension claims cases of this nature is a two-fold inquiry. First, the Court must determine whether the Trustee's action was arbitrary or capricious. *Bueneman v. Central States, Southeast and Southwest Areas Pension Fund,* 572 F.2d 1208, 1209 (8th Cir.1978); *Snyder v. Titus,* 513 F.Supp. 926, 932 (E.D. Va.1981); *Talarico v. United Furniture Workers Pension Fund,* 479 F.Supp. 1072, 1081 (D.Neb.1979). Second, the Court must decide whether the Trustee's interpretation was consistent with the substantive provisions of ERISA. *Winer v. Edison Brothers Stores Pension Plan,* 593 F.2d 307, 312 (8th Cir.1979). In this instant action the Trustee interpreted the vesting

provisions of the ERISA Plan as they applied to Budwig. Since vesting provisions were of primary concern to Congress in enacting ERISA, 29 U.S.C.A. § 1001(a), it is appropriate on review to undertake this two-tiered approach.

■ A second preliminary matter to be briefly addressed before a review of the Trustee's action can take place involves the question of which Plan controls this case. Budwig became a participant when the Original Plan was operative and left his employment when the ERISA Plan and its amendments were in effect. As a general rule of construction in pension claims cases, the version of the plan in effect when the employee's application is filed or is ruled upon is controlling in determining benefits. *Hicks v. Pacific Maritime Association,* 567 F.2d 355, 357 (9th Cir.1978); *Snyder v. Titus, supra,* at 931. For this Court's purposes then, the applicable plan is the ERISA Plan and its amendments and it is those provisions which control Budwig's claim.

With this in mind, the Court now looks to the Trustee's decisions in Budwig's three claims to determine whether the actions were rational, in good faith, and in compliance with ERISA.

### II.  Percentage of Vested Equity

■ Based upon Budwig's employment and termination dates, the Trustee determined that Budwig had completed ten years of continuous service and was entitled to a vested equity of fifty per cent (50%) in his account under Section 11.1 of the ERISA Plan. This computation clearly results from an application of the ERISA Plan vesting schedule and Budwig does not challenge this. Budwig, however, claims there is a variance in the vesting schedules of the ERISA Plan and the Original Plan, and that he is entitled to have his benefits

---

**1.** At trial held on August 9, 1982, it was stipulated that as of June 30, 1977, that portion of the group life insurance policy issued by Bankers Life Insurance Company pertaining to Budwig had a face value of $58,202 and a cash value as of the same date in the amount of $4,867.78, and that the group policy was converted to a paid-up life insurance policy in the face amount of $11,683, and that as of the present date, the policy had a cash value in the amount of $5,489.02.

determined in accordance with the Original Plan because of a provision of the ERISA Plan. Section 11.2 of the ERISA Plan provides that "the vesting percentage of such Participant in his accrued benefit accumulated prior to the Effective Date shall not be reduced * * *." In order to determine if Budwig earned more under the Original Plan, reference must, therefore, be made to its vesting schedule for comparison with the ERISA Plan. This the Trustee did and found no variance. The Court agrees for reasons set forth in the following discussion.

The equity schedule of the Original Plan was computed to correspond with the employee's "years of participation in the plan" and not "years of service." Budwig's "years of participation" commenced on January 31, 1970. He was a participant in the Original Plan for seven years and five months which entitled him to a fifty per cent (50%) equity, the same as the ERISA Plan. Budwig's argument is that he was a participant for more years because (1) he received a contribution for fiscal year 1969 and, therefore, he was retroactively a participant in 1969, which would add another year to his "years of participation"; (2) he worked more than one thousand (1,000) hours in 1977, which was sufficient to count as a "year of service" under the ERISA Plan, thereby crediting him with another "year of participation" in the Original Plan; and (3) he substituted the ERISA method of computation, namely "years of service" for "years of participation" and concluded that he had ten "years of participation" in the Original Plan and, therefore, a vested equity of eighty per cent (80%). Such reasoning is unpersuasive. Budwig maintains that the Trustee must apply the Original Plan provisions because it afforded him a vested equity in excess of the fifty per cent (50%) vested position clearly dictated by the ERISA Plan. But he weakens his case when he argues that the Trustee ought to supplement the Original Plan with a concept from the ERISA Plan to establish his claim for additional vested equity. Budwig cites as authority for such a substitution the ruling in *James Tucci v.*

*Edgewood Country Club,* 459 F.Supp. 940, 942 (W.D.Pa.1978). However, *Tucci* is distinguishable. In *Tucci,* the Court applied an ERISA definition to establish the employee's participation in an ERISA Plan. In the instant case, Budwig strives to apply an ERISA concept to establish entitlements under a pre-ERISA Plan. The situations are not analogous.

Budwig is not successful in proving that there is a variance between the vesting schedules of the two plans as they pertain to him. Since there is no proven variance between the plans, the provisions of the ERISA Plan control, and his vested position remains fifty per cent (50%). This is the amount determined by the Trustee and this Court finds no arbitrary or capricious action in this calculation. The Trustee's analysis was a rational and fair interpretation of the two vesting schedules.

The Court's inquiry now turns to the second tier to consider whether the Trustee's action with respect to the vested equity percentage was in compliance with ERISA. Once again the focus must be on the change in vesting schedules following the adoption of the ERISA Plan and its subsequent amendments. ERISA allows a change in the vesting schedule provided that the nonforfeitable percentage of the employee's accrued benefit as of the date of the change is not adversely affected. 29 U.S.C.A. § 1053(c)(1)(A). A comparison must then be made between Budwig's vested position under the Original Plan as of February 1, 1976, and Budwig's vested position under the ERISA Plan as of February 1, 1976, when the plans changed. As of that date, Budwig would have had six "years of participation" in the Original Plan (from January 31, 1970 to January 31, 1976), and that would have yielded a forty per cent (40%) vested equity pursuant to Section 11.3 of the Original Plan. Under the ERISA Plan, Budwig would have been credited with eight "years of service" (from November 13, 1967 to January 31, 1976), and the application of Section 11.1, the vesting schedule of the ERISA Plan, would have resulted in the forty per cent

(40%) vested position. Budwig's position would not have been adversely affected by the change in the vesting schedules as of the effective date of the ERISA Plan. It follows then that the ERISA Plan vesting schedule and the Trustee's interpretation of Budwig's vested position are in compliance with the ERISA provision.

### III. Contribution for the Trust Year Ending January 31, 1978

■ The second decision of the Trustee that Budwig objects to in this action is the Trustee's determination that no contribution was allocated to Budwig for the Trust Year ending January 31, 1978. The Trustee's construction of the plans led him to conclude that Budwig was precluded from the contribution because he was not an employee on January 31, 1978. Budwig maintains that the Plan does not require employment on January 31, 1978, but requires only that he be a "participant" on January 31, 1978. While the pertinent language in the ERISA Plan is not as explicit as it could have been in this regard, this Court finds that the Trustee was not arbitrary or capricious in his interpretation of the relevant provisions. There is adequate support for the Trustee's decision that Budwig must be both employed by Natelson's and a participant in the Plan on January 31, 1978.

Section 7.5 of the ERISA Plan as amended in 1977 provides that "(t)he contributions by and on behalf of the Employer for the Trust Year shall be allocated among Participants (who are Participants on the last day of such Trust Year) * * *." Because Budwig worked more than one thousand (1,000) hours in 1977, he contends that he qualifies for the contribution as a "participant." While this approach has some merit, chiefly because the Plan drafters could have been more clear, it does not render the Trustee's alternate interpretation irrational, when reviewed in conjunction with other provisions. Section 7.8 of the ERISA Plan provides that if the termination of employment of a participant occurs during the Trust Year, the valuation of the Trust Fund and the participant's account "shall be made as of the close of the Plan Year Quarter coincident with or immediately *preceding* * * * the date the participant's employment is terminated for any reason * * *. The account of such former Participant as so determined shall not change thereafter by reason of * * * contributions received by the Trust Fund and such account shall be employed in the computation of his benefits under the Plan." (Emphasis added.) A reasonable reading of this provision supports the Trustee's decision that no contribution be allocated to Budwig after his termination date. Since the valuation of a terminated employee's account relates back to the nearest fiscal quarter preceding his termination, the employee's account on that date would not include a contribution made at the end of the Trust Year. A review of the Summary Plan Description distributed to Budwig further buttresses the Trustee's approach. On Page 2 under the "Continuing Participation" section, it is stated that "Your participation in the Plan will continue as long as you (1) remain employed by Natelson's * * *." On Page 3 under the heading "Allocation of Contributions and Forfeitures," it is stated that "You must be a participant on January 31 *and* have worked at least one thousand (1,000) hours for Natelson's during the preceding calendar year in order to share in the annual contribution to the Profit Sharing Plan." (Emphasis added.) The Court notes that the second phrase of this last sentence would be unnecessary and redundant if it were to follow the interpretation urged by Budwig. The two provisions of the ERISA Plan when read together and coupled with the statements in the Summary Plan Description convince this Court that the Trustee was not arbitrary or capricious in refusing to allocate the contribution for the Trust Year ending January 31, 1978, for Budwig.

■ Finding the Trustee's interpretation to be rational, the Court next considers whether the Plan provision requiring employment on the allocation date is inconsist-

**667**

ent with ERISA. This Court finds that it is not for the following reasons:

First, no express provision of ERISA has been shown to preclude such a requirement. Second, Revenue Ruling 76–250, which construes Sections 410 and 411 of the Internal Revenue Code pertaining to contribution plans, provides that a plan could require that a participant be employed as of the last date of the computation period in order to receive an allocation so long as it does not result in discrimination of officers in favor of officers, shareholders or highly compensated employees. It has not been shown that such discrimination results from this ERISA Plan or the Trustee's interpretation of it. While the provisions of ERISA and I.R.C. §§ 410 and 411 require that Budwig's one thousand (1,000) hours of work in 1977 be counted as a "year of service" for vesting computation purposes, there has not been found a similar requirement that his hours of work entitle him to an allocation for the Trust Year ending January 31, 1978. Therefore, the Court finds no inconsistency with ERISA.

### IV. Insurance Policy

■ Budwig's third claim is that he is entitled to have his paid-up insurance policy now held by the Trustee distributed to him immediately. He testified at trial that he was told by certain officers of Natelson's that the cash value of the policy would be his when he left. He relies on those representations and on Section 11.5 of the ERISA Plan which provides as follows:

11.5 In the event that the Trustee holds a Contract on the life of a terminated Participant, the premiums for which were charged to the account of such Participant, such Contract shall fully vest immediately, but the Trustee shall retain control and possession thereof and at the discretion of the Committee may delay delivery of the same up to but not later than the Participant's Normal Retirement Date, and in the interim, may elect any option thereunder.

Based upon this language, he urges the Court to make the inference that the Trus-

tee must deliver the policy to him immediately. This inference is not warranted. While Budwig's rights to the policy vest immediately, it does not follow that delivery must take place immediately. The Section permits the Trustee to elect any option while in possession of the policy. The Trustee elected not to distribute the policy to Budwig. The ERISA Plan vests the Trustee with broad discretion in determining the distribution of benefits. Section 12.4 provides that the Trustee shall be the sole owner of any life insurance policies acquired for the plan participants and reserves to the Trustee the right to exercise any right or option thereunder. This Court is bound by the language of the pension agreement, unless that language is clearly inconsistent with the policies underlying ERISA. *Blackmar v. Lichtenstein,* 603 F.2d 1306, 1309 (8th Cir.1979); *Flinchbaugh v. Chicago Pneumatic Tool Co.,* 531 F.Supp. 110, 113 (W.D.Pa.1982). This Court holds that the Trustee's decision to refuse to exercise his discretion to make immediate payment of Budwig's insurance benefits is not arbitrary or capricious.

As a final point, the Court must consider whether such action is in compliance with ERISA. Budwig argues that it is not because the Summary Plan Description did not discuss insurance policies. ERISA does require that a Summary Plan Description be furnished to participants, 29 U.S. C.A. § 1022(a)(1). But upon close examination of the relevant provisions, this Court does not find a requirement that incidental insurance policies be described in detail in the summary, 29 U.S.C.A. § 1022(b), especially when the Plan itself adequately explains the insurance policy procedure. Furthermore, the Trustee's action to refrain from distributing the policy immediately may be in furtherance of the underlying policy of ERISA. It has been recognized that the practice of making immediate payments upon termination prior to a normal retirement date is inconsistent with the purpose of ERISA, which was to protect and secure employee's benefits to provide for them upon their retirement, death or

disability. *Fine v. Semet,* 514 F.Supp. 34, 43 (S.D.Fla.1981). In reviewing the Trustee's exercise of discretion in this regard, the Court hereby finds that it was not inconsistent with ERISA.

CONCLUSION

Based upon the reasoning set forth above, the Court concludes that the decisions of the Trustee must be affirmed. The Trustee made the following determinations:

1) That Budwig's vested equity was fifty per cent (50%):

2) That Budwig was not entitled to an allocation of Natelson's contribution for the Trust Year ending January 31, 1978; and

3) That Budwig was not entitled to an immediate distribution of the insurance policy.

The Court holds that the Trustee's action was not arbitrary or capricious nor was it inconsistent with ERISA.

Accordingly, a separate order directing that judgment be entered for the defendant will be entered contemporaneously with this memorandum.