Pauline SKELTON, etc., Plaintiff,

v.

Robert J. LOWEN, etc., et al.,
Defendants.

Civ. A. No. 86–855–N.

United States District Court,
E.D. Virginia,
Norfolk Division.

Sept. 16, 1987.

Patricia W. Lemley, Norfolk, Va., for plaintiff.

David C. Kohler, Christian, Barton, Epps, Brent & Chappell, Richmond, Va., for defendants.

### ORDER

CLARKE, District Judge.

This matter comes before the Court on Motions for Summary Judgment filed by both plaintiff and defendants. The parties have filed responsive briefs and have stipulated the facts and exhibits. Accordingly, this matter is ripe for disposition.

Defendants are the Chairman and Board of Trustees of the Master, Mates & Pilots Health & Benefit Plan (the "Health Plan"). The Health Plan was established in 1950 pursuant to Section 302(c)(5) of the Labor Management Relations Act, 29 U.S.C. § 186(c)(5). It is a multi-employer welfare benefit plan that resulted from collective bargaining between the International Organization of Masters, Mates & Pilots and various maritime employers. Plaintiff's decedent, Dwight Skelton ("Skelton"), was employed as a licensed deck officer by one of the Health Plan's contributing employers in 1964. He subsequently became entitled to coverage under the Plan. He continued to work as a licensed deck officer for various contributing employers until April, 1982 (except for a three-and-a-half year period when he was temporarily disabled). On April 19, 1982, Skelton was hospitalized with recurrent Hodgkins disease and became totally and permanently disabled.

Between April 19, 1982 and August 18, 1983, the Health Plan paid Skelton medical expense benefits in accordance with the Rules and Regulations of the Health Plan (the "Rules and Regulations"). The payment of these benefits is not in dispute.

Between August 19, 1983 and Skelton's death on June 12, 1985, Skelton and his counsel continued to submit claims for medical expense benefits, but these claims were denied by the Health Plan. In September 1984, Skelton wrote to the Health Plan inquiring as to his eligibility for a disability pension. Skelton was informed that he was ineligible for a disability pension. This determination is not in dispute. A month later, Skelton wrote to the Health Plan inquiring as to his eligibility for medical expense benefits, and in addition, for temporary long-term disability benefits. He was advised that he was ineligible for either type of benefits.

In November of 1986, plaintiff, as administratrix of Skelton's estate, brought an action alleging that defendants had violated Section 302(c)(5) of the Labor Management Relations Act by failing to pay Skelton medical expense benefits from August 19, 1983 until June 12, 1985 and temporary long-term disability benefits from April 19, 1983 until June 12, 1985.

Plaintiff's claim challenges defendants' interpretation of the Rules and Regulations as they pertain to medical expense benefits and temporary long-term disability benefits. At the outset, the Court recognizes that it can overturn defendant Trustees' interpretation of the Rules and Regulations only if such interpretation was arbitrary and capricious. *See Morgan v. Mullins,* 643 F.2d 1320, 1321 (8th Cir.1981); *Rueda v. Seafarers International Union of North America,* 576 F.2d 939, 943 (1st Cir.1978); *Snyder v. Titus,* 513 F.Supp. 926, 932 (E.D.Va.1981). Under this standard, the Court cannot substitute its own interpretation of the Rules and Regulations for that of defendants; instead, the Court must limit its review to whether the defendants' interpretation was rational and reasonable. *See Snyder,* 513 F.Supp. at 932.

The Court first takes up defendants' interpretation of the Health Plan's medical expense benefits provision. The Rules and Regulations, Article VI, Section 1 provide:

*Section 1. Major Medical Expense Benefits*

If any eligible Employee or eligible Dependent incurs Covered Medical Expenses (as defined herein) a benefit shall be reimbursable to the Employee, for such expenses so incurred in an amount equal to 80% of the amount by which the sum of all Covered Medical Expenses which are incurred by the Employee and his Dependents in a calendar year exceeds the deductible amount of $100.00 on the date on which the Employee or Dependent receives or is furnished with services or supplies in connection with which such expense is incurred.

Effective June 16, 1981, all out-of-pocket covered expenses incurred during an 18–month period or incurred as the result of one illness or injury in excess of $1,500, shall be reimbursed 100% under Major Medical. (Amendment No. 70—Adopted 12/4/81).

Exhibit B at 77. Plaintiff asserts that this section entitled Skelton to medical expense benefits from August 19, 1983 to June 12, 1985.

Defendants, however, contend that these medical expense benefits are not triggered unless a claimant is an "eligible Employee." Article I, Section 14 defines an "Eligible Employee" as "an Employee who meets the conditions of eligibility set forth in Article II." Exhibit B at 37. Article II, Section 1(a)–(d)(1) goes on to provide:

*Section 1. Active Employees*

(a) Each Active Employee who has been on the payroll of one or more Employers shall become eligible for benefits hereunder on the date such Employee completes thirty days on the payroll of one or more Employers within any period of six consecutive calendar months. However, an Active Employee shall become eligible from the date he proceeds to sea on a voyage contemplated to exceed thirty days.

Each day of employment as a Relief Mate shall count the same as other employment for the purpose of determining eligibility. (Amendment No. 50— Adopted January 25, 1973).

(b) Employment by an Employer, after the active Employee has been advised by the Plan through the Union that such Employer is delinquent in its contributions to the Plan, shall not be considered days on the payroll for the purpose of determining or continuing eligibility.

(c) For the purpose of determining eligibility hereunder, days of Disability shall count as days on payroll of one or more Employers upon the following conditions:

(1) *For the purpose of establishing eligibility*, the days of Disability are within six (6) consecutive months of the last day of the Active Employee was actually on such payroll.

(2) *For the purpose of continuing eligibility*, each day of Disability shall count as a day on such payroll, subject to the limitations set forth in Sub-Section (d) of this Article II.

(d) The eligibility of an Active Employee shall terminate on the earliest of the following dates:

(1) The last day of the period of six (6) consecutive months starting with the last day of a period of thirty days or more, in any six (6) consecutive months, for which the Active Employee was on the payroll of one or more Employers; provided, that eligibility which is based in whole or in part upon days of Disability shall in no event be continued for more than one (1) year from the last day of Disability which occurred within six (6) consecutive months of the last day the Active Employee was actually on such payroll.

Exhibit B at 38–39. Defendants draw specific attention to the termination language of Section 1(d)(1), which in effect limits the benefits eligibility period of a disabled employee to a maximum of eighteen months after he goes off the contributing employer's payroll.

■ The Court must conclude that defendants' interpretation of the Rules and Regulations as barring Skelton's claim for medical expense benefits after August 18, 1983 was rational and reasonable. The Court cannot, as plaintiff in essence urges, put blinders on as to defined terms of the Rules and Regulations used in the medical expense benefits provision of Article VI, Section 1. The use of the term "eligible Employee" in that section carries with it the eligibility termination provision of Article II, Section 1(d)(1). Since the termination provision clearly limits the benefits eligibility period of disabled claimants such as Skelton to a maximum of eighteen months after going off the payroll, defendants did not act arbitrarily or capriciously in refusing to pay medical expense benefits to Skelton after August 18, 1983.

■ The Court now turns to defendants' interpretation of the Health Plan's temporary long-term disability provision. This provision was incorporated as Article IV, Section 9 of the Rules and Regulations in 1982 and provides:

*Section 9. Temporary Long-Term Disability Program*

Effective June 16, 1982, Participants, who, while eligible for benefits under the Plan, become totally disabled and unable to engage in any occupation shall be provided a "Wage Continuation Program," to commence the sixth month following the month in which the Participant's disability occurred.

This benefit will be paid monthly in an amount equal to the average monthly earnings of the Participant in covered employment during the 36 months prior to disability up to a maximum of $1,500 per month. The amount payable will be offset by any Disability or Pension Benefits payable under the M.M. & P. Benefit Plans, as well as any Social Security Awards payable to such Participant. The benefit will be paid during the period of disability up to a maximum of 60 monthly payments for any one disability.

Exhibit E at 231. The crux of plaintiff's claim for temporary long-term disability benefits is that the word "temporary" as used in the heading of Section 9 refers to benefits. Defendants counter that "temporary" modifies "disability" and therefore

Skelton was ineligible for these benefits since he was permanently disabled. Again, the Court cannot conclude that defendants' interpretation was arbitrary or capricious. Prior to Skelton's inquiry in September 1984 regarding his eligibility for these benefits, defendants had denied two claims for these benefits on the basis that the claimants were permanently disabled. Exhibit F at 268–269. A consistent pattern of interpretation is significant evidence of rationality and reasonableness. *Gordon v. ILWU–PMA Benefit Funds,* 616 F.2d 433, 440 (9th Cir.1980); *Snyder,* 513 F.Supp. at 933. The defendants later adopted Amendment No. 81 to clarify their intent that only temporarily disabled claimants were eligible for these benefits. *Id.* at 272. Furthermore, defendants' interpretation of this provision is coherent when read in light of the Masters, Mates & Pilots Pension Plan (the "Pension Plan") which provides a disability pension for those claimants with at least ten years of pension credit. *See* Exhibit I. As stated above, plaintiff was denied a disability pension because he lacked the requisite years of pension credit. Defendants' interpretation of the temporary long-term disability provision avoids the payout of double pensions—one under the Health Plan and one under the Pension Plan—that would occur under plaintiff's interpretation in those cases where a claimant had accrued ten years of pension credit. In light of the defendants' prior application of the temporary long-term benefits provision and other evidence of their intent as to the provision and the provision's interplay with the Pension Plan, defendants' interpretation of the term "temporary" was a rational and reasonable response to Skelton's attempt to circumvent the requirements for a disability pension. Therefore, defendants did not act arbitrarily or capriciously in refusing to pay temporary long-term disability benefits to Skelton.

For the foregoing reasons, plaintiff's Motion for Summary Judgment is DENIED, defendants' Motion for Summary Judgment is GRANTED, and plaintiff's claim is DISMISSED with prejudice.

The Clerk is DIRECTED to send a copy of this Order to counsel for the plaintiff and defendants.

IT IS SO ORDERED.