Thomas J. REDMOND, Jr., Appellant,

v.

BURLINGTON NORTHERN RAILROAD COMPANY PENSION PLAN; Burlington Northern Railroad Company, a corporation; and The First Trust Company of St. Paul as trustee for the Burlington Northern Railroad Company Pension Plan, Appellees.

No. 86–5446.

United States Court of Appeals,
Eighth Circuit.

Submitted May 13, 1987.

Decided June 8, 1987.

Rehearing Denied July 15, 1987.

462

Wayne H. Olson, Minneapolis, Minn., for appellant.

Michael H. Streater, St. Paul, Minn., for appellees.

Before FAGG, WOLLMAN and TIMBERS,[*] Circuit Judges.

TIMBERS, Circuit Judge.

Appellant Thomas J. Redmond ("appellant") appeals from a judgment entered September 29, 1986 in the District of Minnesota, Diana E. Murphy, *District Judge*, which granted summary judgment to appellees Burlington Northern Railroad Company ("the railroad" or "Burlington Northern") and others (collectively "appellees")[1] with respect to appellant's claim in this breach of contract action that appellees miscalculated the amount of his pension benefits.

Appellant was employed by the railroad or its corporate predecessors or subsidiaries from September 1945 until he resigned in March 1957 to attend a seminary ("first period of service"). He worked again for the railroad from February 1960 until his early retirement in December 1982 ("second period of service").[2] Appellees calcu-

---

[*] Of the Second Circuit, by designation.

1. The other appellees are Burlington Northern Railroad Company Pension Plan ("BPP") and The First Trust Company of St. Paul ("First Trust"), which is the trustee of BPP.

2. Appellant was employed by the Northern Pacific Railway Company ("Northern Pacific") from September 1, 1945 to April 30, 1946; by the Yellowstone National Park Company ("Yellowstone") from June to September 1946; by the Great Northern Railway Company ("Great Northern") from October 16, 1946 to March 18, 1957; and by Great Northern and Burlington Northern from February 16, 1960 to December 31, 1982. Northern Pacific, Yellowstone, and

lated appellant's pension benefits based only on his second period of service. Under appellees' interpretation of the railroad's pension plans, appellant's "break in service" from March 1957 to February 1960 made him ineligible for benefits resulting from his first period of service.

In the instant action, appellant sought to compel appellees to include his first period of service in calculating the amount of his pension benefits.[3]

The district court, in granting summary judgment to appellees, held that appellees properly had excluded appellant's first period of service and that there were no genuine issues of material fact.

On appeal, appellant claims, first, that, under a correct interpretation of the railroad's pension plans, he is entitled to benefits for all his years of service; second, that appellees' interpretation of the plans does not comply with § 203(b)(1)(F) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1053(b)(1)(F) (1982); third, that there is a genuine issue of material fact as to whether appellees' allegedly nonuniform application of the pension plans' break in service rules constituted arbitrary treatment of appellant; and, fourth, that appellant was denied effective discovery with respect to his claim of arbitrary treatment.

We hold, first, that appellees' interpretation of the pension plans was neither arbitrary nor capricious and therefore must be sustained if the result of that interpretation does not violate ERISA; second, that appellees' interpretation of the pension plans complies with ERISA; third, that appellant's claim of arbitrary treatment raises no genuine issues of material fact; and,

fourth, that appellant's claim of denial of discovery is without merit.

We affirm.

## I.

We summarize only those facts believed necessary to an understanding of the issues raised on appeal.

During his first period of service, appellant worked as a union employee in various clerical and stenographic positions. Since the railroad's pension plans applied only to "salaried" employees—i.e., non-union employees—appellant did not participate in those plans during his first period of service. He therefore had accrued no pension benefits by the time he resigned in 1957.

On his return to the railroad in 1960, appellant again worked as a union employee until April 1, 1964, when he became a salaried employee. He participated in the railroad's pension plans as a salaried employee in various stenographic and secretarial positions until he retired on December 31, 1982.

The issues on the instant appeal turn primarily on the break in service rules of the respective versions of the railroad's pension plans in effect while appellant was a salaried employee. During that period, appellant participated in the Great Northern Pension Plan as amended January 1, 1951 ("the 1951 Plan") and as amended September 1, 1969 ("the 1969 Plan"); he also participated in the Burlington Northern Pension Plan effective March 2, 1970 ("the 1970 Plan"), which was amended effective December 31, 1975 ("the 1975 Plan"), January 1, 1979 ("the 1979 Plan"), January 1, 1981 ("the January 1981 Plan"), and September 14, 1981 ("the September 1981 Plan").

Great Northern all are either subsidiaries or corporate predecessors of Burlington Northern. Throughout this opinion, the term "the railroad" refers either to all four entities or to the entity or entities which employed appellant during the period of time relevant to this opinion.

3. We set forth in the margin the monthly benefits owed to appellant based only on his second period of service, compared to the monthly ben-

efits owed based on both his first and second periods of service:

|  | Second Period of Service (22 years, 11 months) | First and Second Periods of Service (34 years, 5 months) |
|---|---|---|
| January 1, 1983 to March 16, 1987 | $534.21 | $837.00 |
| After March 16, 1987 | $217.40 | $361.20 |

The plan in effect in April 1964—the 1951 Plan—provided that benefits were to be calculated based on each participant's period of "continuous service" as an "employee". "Employee" was defined as "anyone ... regularly employed" by the railroad. Since that definition did not distinguish between union and salaried employees, appellant became entitled to benefits for his previous years of "continuous service" as a union employee when he became a participant in the 1951 Plan on April 1, 1964. "Continuous service" was defined as "uninterrupted service as an Employee". Regarding breaks in service, the 1951 Plan provided in pertinent part that "termination of service prior to retirement shall be deemed a break in continuous service and upon re-employment the former Participant shall be treated as a new Employee."

The 1969 and 1970 Plans contained the same provisions regarding "continuous service" and "break[s] in continuous service" as did the 1951 Plan, with one exception: the 1969 and 1970 Plans applied retroactively a new rule that resignation followed by reinstatement within one year did not constitute an "interruption of continuous service".

The railroad amended the 1970 Plan to create the 1975 Plan in order to comply with ERISA. Under the 1975 Plan the benefits were based on each participant's "credited service". Under Article III of the Plan, the method for calculating the amount of "credited service" differed depending on whether the service was performed before or after the effective date of the 1975 Plan:

"Section 3.2  *Credited Service:*

. . .

(a) *Credited Service Prior to the Effective Date:* For a Participant as of the Effective Date, who had been covered under the prior provisions of the Plan, the Participant's last period of continuous employment with the Employer prior to the Effective Date shall be counted as Credited Service, including such periods of Authorized Leave of Absence, and other periods, credited under the provisions of the Plan in effect prior to the Effective Date.

(b) *Credited Service From and After the Effective Date:* All service as an Employee shall be Credited Service. In addition, service described in Section 3.4 shall be Credited Service. In the event a Participant ceases to be an Employee but remains in the employ of an Employer, he shall receive no Credited Service until he is again an Employee.

Section 3.3  *Restoration of Credited Service:* If, after the Effective Date, a former Employee re-enters the service of an Employer, or resumes service as an Employee, he shall again become a Participant after completing 1,000 hours of service within a consecutive twelve-month period with an Employer or Employers and such 1,000 hour period of service shall be counted as one year of Credited Service, and the number of years of Credited Service that were creditable under the Plan to such former Employee shall be restored."

Both the 1979 and January 1981 Plans contained provisions nearly identical to those in the 1975 Plan with respect to the determination of the amount of credited service.

Under the plan in effect at the time appellant retired—the September 1981 Plan—pension benefits were based on a participant's "years of credited service". Article 2(9) of the Plan provided in relevant part that years of credited service "shall include [a participant's] credited service under the [January 1981 Plan]".

The railroad informed appellant on the date of his retirement that his pension benefits would be calculated on the basis of his second period of service.

In letters to appellant dated January 13 and March 14, 1984, the Chairman of the railroad's pension committee explained the railroad's interpretation of the pension plans and its reasons for not including appellant's first period of service in calculating his pension benefits. According to the railroad, each Plan in which appellant participated contained provisions making appellant ineligible for benefits based on his

years of service preceding his break in service. Since each successive plan preserved the service credited immediately prior to the effective date, the railroad examined all the plans in which appellant participated in reaching its conclusion. The September 1981 Plan incorporated the method of calculation set forth in the January 1981 Plan. The January 1981 Plan, as well as the 1975 and 1979 Plans, provided that a participant's "last period of continuous employment" shall be counted as "credited service". Under the railroad's interpretation, appellant's first period of service was not part of his *last* period of *continuous* service because appellant had a three year break in service between his first and second periods of service. With respect to the plans preceding the 1975 Plan, the letters of January 13 and March 14, 1984 stated that appellant's break in service in excess of one year constituted a "break in continuous service" and therefore on his re-employment in 1960 he was "treated as a new Employee."

Appellant commenced the instant action in January 1985. Jurisdiction was based on 26 U.S.C. §§ 401, 411 (1982), 28 U.S.C. § 1331 (1982), and 29 U.S.C. § 1132(a) and (e) (1982). In May 1985, the district court ordered that all discovery be completed by March 3, 1986. In May 1986, the railroad filed a motion for summary judgment on behalf of all appellees. Appellant opposed the motion and cross moved for summary judgment.

In a report filed July 31, 1986, Magistrate Bernard P. Becker recommended that summary judgment be granted to appellees. Appellant filed objections to the magistrate's report on August 15, 1986.

In a memorandum opinion filed September 29, 1986, the district court, after reviewing the record de novo and making an independent determination, ordered that appellee's motion be granted. Judgment was entered the same day. This appeal followed.

For the reasons set forth below, we affirm the judgment of the district court.

## II.

### A.

■ In this Circuit it is well established that "[c]laimants for benefits under private pension plans may obtain judicial review of denials of their claims under section 502 of ERISA [29 U.S.C. § 1132]. Federal courts may overturn a decision of private pension fund fiduciaries only if the decision is arbitrary, capricious or an abuse of discretion." *Lawrence v. Westerhaus,* 780 F.2d 1321, 1322 (8th Cir.1985). *Accord, Bueneman v. Central States, Southeast and Southwest Areas Pension Fund,* 575 F.2d 1208, 1209 (8th Cir.1978).

■ Appellant makes four arguments to support his claim that appellees' interpretation of the pension plan was arbitrary or capricious. Each argument is based on language in the pension plans. We find none to be persuasive.

Appellant's first argument is based on section 3.4 of the 1975 Plan which provided in relevant part:

"Section 3.4 *Other Service of Periods Counted as Credited Service:* Credited Service shall also include the following:

. . .

(c) Uninterrupted service before or after the Effective Date [December 31, 1975] prior to becoming a Participant:

1. In the employ of an Employer other than as [a salaried employee], or

2. In the employ of a wholly-owned subsidiary of an Employer other than as [a salaried employee], or

3. Railroad service for the benefit of and with the consent or at the direction of an Employer; ...."

Appellant argues that, since the term "[u]ninterrupted service" is not defined by the 1975 Plan (or by any succeeding plan), appellees acted arbitrarily and capriciously in concluding that appellant's first and second periods of service were not "[u]ninterrupted" by his three-year break in service. This argument is without merit. Webster's Third New International Dictionary defines

"uninterrupted" as "continuous".[4] Appellees concluded that two periods of service interrupted by a break in service of three years are not continuous. That conclusion was neither arbitrary nor capricious; rather, it appears to have been compelled by the unambiguous language of the Plan.

Appellant's second argument is based on the version of section 3.4 set forth in the 1979 Plan. The 1979 Plan's version of section 3.4(c) changes "Uninterrupted service" to "Uninterrupted *periods* of service" (emphasis added). Appellant argues that, since he has two uninterrupted "periods" of service, he is entitled to benefits for both, despite his break in service. We disagree. Such an interpretation of section 3.4(c) would be inconsistent with section 3.2(a) of the 1979 Plan, which provides that "the Participant's last period of continuous employment with the Employer prior to the Effective Date shall be counted as "Credited Service". A more reasonable interpretation of section 3.4(c)—the interpretation adopted by appellees—is that the plural form of "period" refers to the list of items to be included as credited service under all the subdivisions of section 3.4(c); that is, a single participant could have a period of service each as a union employee (section 3.4(c)(1)), in the employ of a subsidiary of the railroad (section 3.4(c)(2)), and in railroad service for the benefit of and with, or at, the direction of the railroad (section 3.4(c)(3)). It is not an arbitrary or capricious interpretation of section 3.4(c) to conclude that such "periods" of service count as credited service as long as, in the aggregate, they are "uninterrupted".

As his third argument, appellant asserts that he is entitled to benefits for his first period of service under section 3.3 of the 1975 Plan:

"Section 3.3 *Restoration of Credited Service:* If, after the effective date, a former Employee re-enters the service of [the railroad] ... he shall again become a Participant after completing 1,000 hours of service within a consecutive twelve-month period with [the railroad] ... and

the number of years of Credited Service that were creditable under the Plan to such former Employee shall be restored."

Appellant argues that his first period of service should constitute credited service since, during his second period of service, he completed in excess of 1,000 hours of service within a consecutive twelve-month period. Appellant's argument fails for two reasons. First, by its terms section 3.3 applies only if the former employee re-enters service "after the effective date" (December 31, 1975). Since appellant's second period of service began in 1960, he cannot seek the protection of section 3.3. Second, appellant had no benefits to "restore" since, when he left the railroad after his first period of service, he had accrued no benefits.

Finally, appellant argues that section 3.2(a) of the Plans of 1975, 1979, and January 1981 entitle him to benefits. That section, which we have quoted in full above, provides that credited service "shall include" the last period of continuous service. Since the section does not *exclude* periods of service before a break in service, so appellant's argument goes, appellees' interpretation is arbitrary and capricious. Appellant's argument, while evincing a certain ingenuity, rests on a tortured reading of the Plans. We reject the argument.

Accordingly, we hold that appellees' interpretation of the pension plans was neither arbitrary nor capricious and therefore must be upheld if its result does not violate ERISA.

### B.

■ Section 203(b)(1)(F) of ERISA provides in relevant part:

"(1) In computing the period of service under the [pension] plan ... all of an employee's years of service with the employer ... shall be taken into account,

---

4. Appellant argues that "uninterrupted" cannot be given its ordinary dictionary meaning because under such an interpretation the 1975 Plan would violate ERISA. We address this argument below in Subdivision B of Section II of this opinion.

except that the following may be disregarded:

. . . . .

(F) years of service before this part [29 U.S.C. § 1051 et seq.] first applies to the plan *if such service would have been disregarded under the rules of the plan with regard to breaks in service*, as in effect on the applicable date; ...."

29 U.S.C. § 1053(b)(1)(F) (emphasis added). In other words, ERISA provides that *all* years of service count towards benefits *unless* the pre–ERISA plan contains rules excluding years of service preceding a break in service. As shown above, all of the railroad's plans—both before and after the effective date of ERISA—had break in service rules which precluded benefits for appellant's first period of service.

Appellant makes several arguments, however, to support his claim that § 1053(b)(1)(F) is inapplicable to the railroad's pension plans and therefore that appellees' interpretation of the plans violates the general rule of inclusion stated in § 1053(b)(1).

First, appellant argues that § 1053(b)(1)(F) is applicable only if the post–ERISA plans specifically incorporate the break in service rules of the pre–ERISA plans. Appellant interprets § 1053(b)(1)(F) to require a specific statement of incorporation in the plan such as: "Breaks in service occurring prior to ERISA shall be governed by the rule as to such breaks contained in the pre–ERISA plan." Appellant's argument finds no support in the language of the statute, its legislative history, or the case law on which appellant relies.

Clearly, the language of § 1053(b)(1)(F) does not require a specific statement of incorporation. It merely permits *application* of pre–ERISA break in service rules to post-ERISA plans. Appellant's argument would be meritorious, therefore, only if the legislative history provided support for the interpretive gloss he invites us to apply. It does not. The only relevant history is found in H.R. Conf. Rep. No. 93–1280, 93d Cong., 2d Sess., *reprinted in*

1974 U.S. Code Cong. & Ad. News 5052 (emphasis added):

"For years beginning prior to the effective date of the vesting provisions, a plan *may apply* the break-in-service rules provided under the plan as in effect from time to time."

The Conference Report, in accordance with the statutory language, says nothing more than *application* of a pre–ERISA rule may be allowed. *See Ponce v. Construction Laborers Pension Trust*, 628 F.2d 537, 541 (9th Cir.1980) ("ERISA specifically permits a pension plan *to give effect to* a break in service that occurred prior to January 1, 1976.") (dictum) (emphasis added) (citing 29 U.S.C. § 1053(b)(1)(F)).

Appellant places primary reliance on *Snyder v. Titus*, 513 F.Supp. 926 (E.D.Va. 1981), to support his specific incorporation argument. There, a participant in the employer's 1959 pension plan had incurred two breaks in service before 1959. Under the 1959 plan, the participant was not entitled to benefits for his service preceding his breaks in service. The first post–ERISA plan—the one in effect at the time the participant retired—explicitly defined break in service as a certain disruption in service occurring after the effective date of the 1959 plan. *Snyder, supra*, 513 F.Supp. at 931. The employer sought to apply the provisions of the 1959 plan to deny benefits to the participant for his service preceding his break in service. The court, in granting summary judgment in favor of the participant, stated:

"[T]he Court concludes that nothing ... prohibits a plan from *expressly* providing that a break in service in years prior to the effective date of ERISA shall be governed by the rule in effect at the time of the alleged hiatus from covered employment. Indeed, the Court believes that it was the intent of Congress in § 1053(b)(1)(F) to permit the adoption of such express provisions in post-ERISA pension plans. The Court does not believe that Congress intended to permit this in the manner attempted by the Trustees here—by positing that a gap exists and then filling the gap by interpretation harkening back to a pre-ERISA

plan. The break in service rule must be expressly stated so that there is no room for an arbitrary and capricious interpretation as to which rule governs a particular period of employment. Otherwise, trustees would be able, as in this case, to dig up break in service rules from old and discarded plans to deny pension applications, thus disappointing the reasonable expectations of pensioners....

Because the 1976 plan does not expressly provide that pre–1959 breaks in service shall be governed by the rule in the 1959 plan, the Court concludes that § 1053(b)(1)(F) does not permit the Trustees to disregard defendant's years of covered employment prior to 1954 and in 1957 under their interpretation of the 1959 break in service rule."

*Snyder, supra,* 513 F.Supp. at 937 (footnote omitted) (emphasis in original).

We do not believe that the analysis in *Snyder* compels the result urged by appellant in the instant case. True, the final sentence quoted above might appear to require a specific statement of incorporation. Other language in the opinion, however, supports the proposition that § 1053(b)(1)(F) is satisfied if the post-ERISA plans explicitly state a break in service rule for pre-ERISA breaks that has the same effect as the rule stated in the pre-ERISA plans. *Snyder, supra,* 513 F.Supp. at 937 ("The break in service rule must be expressly stated"). Unlike the instant case, the post-ERISA plan in *Snyder* treated the participant's pre-ERISA breaks in service differently than they had been treated in the pre-ERISA plan.

■ We hold that § 1053(b)(1)(F) does not require the specific statement of incorporation urged by appellant.

Second, appellant argues that, even if § 1053(b)(1)(F) does not require a specific statement of incorporation, the railroad's pension plans do not pass muster under the statute because the pre-ERISA and post-ERISA pension plans state different rules regarding breaks in service. This argument is without merit. As stated above, appellant's break in service bars benefits for his first period of service under each of the railroad's pension plans. True, the pre-ERISA and post-ERISA plans use different language in their break in service rules. The result of those rules vis-a-vis appellant, however, is the same under each of the plans. We do not read § 1053(b)(1)(F) to require anything more.

Nor are we persuaded by appellant's argument that § 1053(b)(1)(F) does not apply since the post-ERISA plans contain different rules for pre-ERISA and post-ERISA breaks in service. Rather, that was precisely what Congress had in mind when it enacted § 1053(b)(1)(F). *See Snyder, supra,* 513 F.Supp. at 937; *see also Dudo v. Schaffer,* 551 F.Supp. 1330, 1340 (E.D. Pa.1982), *aff'd mem.,* 720 F.2d 661 (3d Cir.1983).

■ Finally, appellant argues that the word "uninterrupted" in section 3.4(c) of the 1975, 1979, and January 1981 Plans cannot be given its ordinary dictionary meaning of "continuous" because then section 3.4(c) would violate § 1053(b)(3)(B). That section of ERISA, which sets forth the so-called "rule of parity", requires that an employee's years of service before any one-year break in service be taken into account if the number of consecutive one-year breaks are less than the aggregate number of years of service prior to the break. Appellant does not argue that appellees' interpretation of the plans violates the rule of parity, nor could he since § 1053(b)(3)(B) applies only to post-ERISA breaks in service. *E.g., Haeberle v. Board of Trustees,* 624 F.2d 1132, 1137 (2d Cir. 1980); *Dudo, supra,* 551 F.Supp. at 1340. Rather, appellant argues that "uninterrupted" cannot mean "continuous" since some noncontinuous service should be credited under the rule of parity. We are not persuaded. While we agree that language in post-ERISA plans should be read, when possible, to comply with ERISA, such a reading in the instant case has no bearing on the result: whether or not service is "uninterrupted" by breaks in service covered by the rule of parity, appellant is not entitled to benefits for his service preceding a three-year pre-ERISA break in service.

Accordingly, we hold that appellees' interpretation of the pension plans, and the result under that interpretation, comply with ERISA.

### C.

Appellant's remaining claims need not detain us long.

■ Appellant claims that there is a genuine issue of material fact as to whether the railroad's pension committee abused its discretion in denying him benefits for his first period of service because the plans' break in service rules were not applied uniformly. Specifically appellant directs our attention to a decision by the railroad's board of directors—overruling the pension committee—to grant pension benefits to H.R. Hudgers, who retired in 1978, for his period of service preceding his break in service. Another employee—Taul Watanbe—apparently was granted similar treatment. We agree with the magistrate and the district court that these two isolated incidents, at least one of which did not result from any action by the pension committee, do not raise a genuine issue as to whether the pension committee acted arbitrarily.

We hold that the district court correctly disposed of the case by summary judgment.

■ Appellant also claims that he was denied effective discovery and as a result was unable fully to develop his claim of arbitrary treatment. Appellant complains of "delays" by appellees and their "refusal to allow copying to facilitate examination of the limited documents that were finally made available". While we agree that a party must have an adequate opportunity to develop his claims through discovery before summary judgment is appropriate, appellant's claim rings hollow. Not once during 14 months of discovery did appellant request an order to compel discovery or for an extension of time. *Cf. Celotex Corp. v. Catrett,* 106 S.Ct. 2548, 2554–55 (1986) (premature summary judgment motions can be dealt with by applying under Fed.R.Civ.P. 56(f) for additional time to conduct necessary discovery).

We hold that appellant's claim that he was denied effective discovery is without merit.

### III.

To summarize:

We hold that appellees' interpretation of the railroad's pension plans so as to deny appellant pension benefits for his first period of service was neither arbitrary nor capricious. We also hold that that interpretation complies in every respect with § 203(b)(1)(F) of ERISA. We further hold that there is no genuine issue of material fact as to whether the railroad's pension committee acted arbitrarily in denying appellant benefits. Finally, we hold that appellant's claim that he was denied effective discovery is without merit.

Affirmed.