**Joseph BAKER, Plaintiff-Appellee,**

**v.**

**SHEET METAL WORKERS LOCAL UNION NO. 9 PENSION TRUST FUND, Defendant-Appellant.**

**No. 81CA1206.**

Colorado Court of Appeals,
Div. III.

July 7, 1983.

---

* Retired Court of Appeals Judge sitting by assignment of the Chief Justice under provisions of the *Colo. Const.,* Art. VI, Sec. 5(3), and § 24–51–607(5), C.R.S.1973 (1982 Cum.Supp.).

Michael L. Gilbert, Denver, for plaintiff-appellee.

Gorsuch, Kirgis, Campbell, Walker & Grover, Dan S. Cross, Denver, for defendant-appellant.

KELLY, Judge.

Defendant, Sheet Metal Workers Local Union No. 9 Pension Trust Fund, appeals a district court judgment finding its trustees' denial of full pension benefits to plaintiff, Joseph Baker, contrary to the terms of the pension plan and, therefore, arbitrary and capricious. The central issue is whether the trustees acted arbitrarily and capriciously in applying the "break-in-service" rule contained in the original pension plan where the revised plan, in operation at the time of Baker's retirement, would not have operated to cut off the previously earned credits. On appeal, the trustees contend that their action was a rational exercise of their authority to interpret and administer the pension plan. We affirm.

This case involves the interpretation of the 1967 Pension Plan, and its 1976 revision. Under this original 1967 Plan, credit could be accumulated in two ways. First, participants who had worked in the industry prior to inception of the plan could receive credit if the work would have qualified as "covered employment." Covered employment is defined as work for an employer who would have been making contributions to the plan on the employee's behalf had the plan been in effect. The credit thereby received would be for "past services." Second, credits for "future services" accumulate when a participant works for an employer who actually contributes to the pension trust fund on behalf of the participant.

The "contribution date" is the first date on which contributions are made, here 1967, the date of the original plan. As a result of a recommendation in an actuarial study commissioned by the trustees of the plan, the original 1967 Plan included a "break-in-service" rule under which an employee who failed to earn pension credit during three consecutive years lost any pension credits previously earned. Such a rule was deemed necessary by the trustees in order to provide an ascertainable maximum liability which would, in turn, determine the rates of contribution needed to fund the plan adequately.

Baker worked in covered employment from 1950 to 1960, and again from 1967 until November 1979. Upon Baker's retirement in 1979, the trustees granted a pension in the amount of $309.50 per month, cancelling any credits earned before 1967 because of the break in service between 1960 and 1967. Baker, after exhausting his administrative remedies, brought suit arguing that his absence from covered employment did not constitute a break in service under the terms of the subsequent 1976 Plan, and that he was, therefore, entitled to pension benefits in the amount of $619 a month.

The trustees contend that the terms of the earlier 1967 Plan cancelled the past service credits earned between 1950 and 1960, before the inception of the subsequent 1976 Plan. They argue that, although the 1976 Plan expressly provides for accumulation of past service credits before the contribution date, nonetheless, because the 1976 Plan omits reference to the pre-contribution date breaks in service, use of the 1967 Plan for clarification and interpretation of the 1976 Plan's break-in-service provisions is not arbitrary and capricious.

They argue particularly that this is the case since break-in-service rules are necessary to uphold the financial integrity of the plan.

The trial court held the later 1976 Plan to be the controlling document and concluded that the trustees acted arbitrarily and capriciously in reading the provisions of the 1967 Plan into the 1976 Plan so as to preclude granting full pension benefits to Baker. We agree.

## I.

Both parties concur that the applicable standard in reviewing actions by trustees of a pension fund is whether the action was "arbitrary and capricious." While the trustees have broad discretion in administering the plan, they are bound by its express provisions. The trustees of a pension plan act arbitrarily and capriciously when they act so as to contravene the express language of the plan they are charged with administering. *See Morgan v. Mullins,* 643 F.2d 1320 (8th Cir.1981); *Church v. Huge,* 500 F.Supp. 133 (W.D.Va.1980); *Winston v. Trustees of Hotel & Restaurant Employees & Bartenders International Union Welfare Fund,* 110 Ill.App.3d 163, 65 Ill.Dec. 703, 441 N.E.2d 1217 (1982).

The trial court, relying on *Snyder v. Titus,* 513 F.Supp. 926 (E.D.Va.1981), concluded that the trustees had, without justification, read an unnecessary ambiguity into the plan. There, as here, the plan provided for breaks in service after the contribution date, but was silent as to pre-contribution date breaks in service. The court noted:

"A break in service occurs only upon a disruption in covered employment after [the contribution date]. Pre-1959 breaks in service have thus been specifically defined out of existence. The concept simply does not exist under this 1976 plan." 513 F.Supp. at 932.

The language in the plan is unambiguous. The 1976 Plan expressly provides for the accumulation of past service credits before the contribution date. The section of the 1976 Plan relating to breaks in service, however, makes no reference to pre-contribu-tion date breaks in service. That provision of the 1976 Plan states:

"Permanent Break in Service before January 1, 1976. Between the Contribution Date and December 31, 1975, a person shall have incurred a Permanent Break in Service and his Credited Service and accrued benefits [shall be] cancelled if he failed to earn at least 100 hours of Credited Service in any Plan Year."

Thus, as in *Snyder,* only breaks in service which occur between 1967, the date of the original pension plan, and 1976 have the effect of cancelling credited service. Breaks in service occurring before 1967 have no effect on credited service.

Nor is there any ambiguity as to which plan affected Baker's rights when he retired in 1979. The preamble to the 1976 Plan expressly establishes its applicability to pensions commencing after January 1, 1976. Further, the applicability of the 1976 Plan is consistent with the general rule among the courts that the plan in effect at the time the participant applies for benefits is controlling. *See Snyder, supra; Hicks v. Pacific Maritime Ass'n,* 567 F.2d 355 (9th Cir.1978); *Danti v. Lewis,* 312 F.2d 345 (D.C.Cir.1962). Thus, Baker's pension benefits, which commenced in 1979, are governed by the terms of the 1976 Plan.

## II.

Baker seeks an award of attorney's fees associated with this appeal. Since Baker sued under the Employee Retirement Income Security Act of 1974, 29 U.S.C.A. § 1001, et seq., the trial court's award of attorney's fees for the trial pursuant to 29 U.S.C.A. § 1132(g)(1), was proper. The latter section provides:

"In *any* action under this subchapter (other than an action described in paragraph (2)) by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." (emphasis added)

We agree that this statutory section includes recovery of attorney's fees incurred

on appeal. *Johns v. Retirement Fund Trust,* 117 Cal.App.3d 113, 172 Cal.Rptr. 541 (1981).

The judgment is affirmed and the cause is remanded for further proceedings to determine the amount of reasonable attorney's fees incurred on this appeal and to enter judgment therefor.

BERMAN and VAN CISE, JJ., concur.