**F I L E D**

**UNITED STATES COURT OF APPEALS**

**JUL 21 2003**

**TENTH CIRCUIT**

---

ELLSWORTH WALKER; ESTATE OF
VIRGIL SALAZAR; MARY LOU SALAZAR,
in her capacity as executor of Virgil Salazar's
Estate,

     Plaintiffs-Appellees,

v.

BOARD OF TRUSTEES, REGIONAL
TRANSPORTATION DISTRICT AND
AMALGAMATED TRANSIT UNION
DIVISION 1001 PENSION FUND TRUST;
REGIONAL TRANSPORTATION DISTRICT
AND AMALGAMATED TRANSIT UNION
DIVISION 1001 PENSION FUND TRUST;
ROSEMARIE SNYDER, MICHAEL RUCKER,
GREGG FISHER, LLOYD MACK, LARRY
SORGET, and EARL NICHOL, Trustees,

     Defendants-Appellants.

No. 02-1173
(D. Colo.)
(D.Ct. No. 98-B-2585)

---

## ORDER AND JUDGMENT[*]

Robert Lawrence Liebross (J. Mark Baird with him on the brief), Denver,
Colorado, for Plaintiffs-Appellees.

---

[*] This order and judgment is not binding precedent except under the doctrines of
law of the case, *res judicata* and collateral estoppel. The court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

Dean C. Heizer, II (David B. Seserman and Miranda K. Hawkins with him on the briefs) of Gorsuch Kirgis LLP, Denver, Colorado, for Defendants-Appellants.

Before **EBEL**, Circuit Judge, **BRORBY**, Senior Circuit Judge, and **MURPHY**, Circuit Judge.

_____

A Board of Trustees of a pension plan adopted an amendment and applied it to existing retirees, reducing their pension benefits. Two of the retirees sued in state court after the Board denied their appeals. The Board removed the action to federal district court. The district court held the Board willfully and wantonly breached its contract with the retirees and breached its fiduciary duties. The Board appeals. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I. Background

The Denver Regional Transportation District and the Amalgamated Transit Union entered a collective bargaining agreement. As part of the agreement, they created a pension plan for Union employees. The District and the Union appointed an independent Board of Trustees to administer the plan.

Exercising its authority under the plan, the Board of Trustees amended the plan definition of "final average earnings" in 1991. In relevant part, the new definition allowed employees who transferred from covered Union positions to

-2-

non-covered management positions to receive Union pension benefits based on the employee's highest sixty months of earnings, including any earnings made in non-covered management positions. The Board adopted this amendment in order to facilitate, and to avoid discouraging, the transfer of employees between covered Union positions and non-covered management positions.

Ellsworth Walker and Virgil Salazar were employees of the Regional Transportation District and participants in the pension plan. After working for a number of years in covered Union positions, both Messrs. Walker and Salazar transferred to non-covered management positions. Both eventually retired and began receiving pension benefits. At the time of their respective retirements, the definition of "final average earnings" that the Board adopted in 1991 was in effect.

A few years after their retirements, the Board again amended the plan definition of "final average earnings" because it believed the definition it adopted in 1991 was "inconsistent" with other provisions of the plan and the plan's purpose. The amendment, adopted in 1998, revised the definition of "final average earnings" to exclude from the benefit calculation employees' earnings from any non-covered management positions. The Board applied the 1998

amendment to Messrs. Walker and Salazar, among others, significantly reducing their pension benefits.

Messrs. Walker and Salazar appealed the Board's decision, but the Board denied the appeals. They then sued the Board in the district court for the City and County of Denver. The Board removed the action to the United States District Court for the District of Colorado based on Messrs. Walker and Salazar's claims under 42 U.S.C. § 1983. 28 U.S.C. § 1441. The Board moved to dismiss, arguing (among other things) it was immune from suit under the Colorado Governmental Immunity Act for Messrs. Walker and Salazar's breach of fiduciary duty claims. The district court denied the motion in relevant part.

The Board and Messrs. Walker and Salazar subsequently filed cross-motions for summary judgment. The court granted the Board's motion only on Messrs. Walker and Salazar's 42 U.S.C. § 1983 claims because they did not include the claims in the pretrial order. The court granted Messrs. Walker and Salazar's motion on their claims for breach of contract and breach of fiduciary duties.

While this case was pending in the district court, Mr. Salazar died. The

district court substituted Mr. Salazar's wife, Mrs. Salazar, as a plaintiff in the case in her capacity as executor of Mr. Salazar's estate.

The case went to trial on the issues of whether the Board's conduct was willful and wanton, whether Messrs. Walker and Salazar suffered emotional distress as a result of the Board's conduct, and attorney's fees. The court found the Board acted willfully and wantonly in breaching its contract with Messrs. Walker and Salazar. In addition, the court found both Messrs. Walker and Salazar suffered emotional distress as a result of the Board's breach. The court awarded Mr. Walker and Mr. Salazar's estate compensatory damages, including emotional distress damages, and attorney's fees. The court also awarded Mr. Walker consequential damages. The Board appeals.

## II. Discussion

The Board raises five claims of error on appeal: (1) the district court incorrectly determined the Board was not immune from suit under the Colorado Governmental Immunity Act for Messrs. Walker and Salazar's breach of fiduciary duty claims; (2) the district court erred in granting summary judgment against the Board on Messrs. Walker and Salazar's claims for breach of contract and breach of fiduciary duties; (3) the district court incorrectly allowed Mr. Salazar's breach

of fiduciary duty claims to survive his death in violation of Colorado's survival statute; (4) the district court erred in allowing Mr. Salazar's wife to testify about his emotional distress in violation of Colorado's dead man's statute; and (5) the district court erroneously admitted hearsay evidence and concluded the Board's breach of contract was willful and wanton. We address each argument in turn.[1]

## A. The Colorado Governmental Immunity Act

Before trial, the Board moved the district court to dismiss (in relevant part) Messrs. Walker and Salazar's claims for breach of fiduciary duty under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. The district court denied the motion. The Board argues on appeal the district court should have dismissed the claims because it is "immune from liability for tort-based claims under the Colorado Governmental Immunity Act."

We review de novo the district court's denial of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) and 12(b)(1). *See Ashley Creek Phosphate Co. v.*

---

[1] The Board also argues in a footnote the district court "erred by awarding Mr. Walker consequential damages. Insufficient evidence existed in the record to support Mr. Walker's alleged consequential damages due to Mr. Walker's continuous discovery abuses." The Board does not elaborate on this argument or cite to the record or any law in support of this argument; in any event, after reviewing the record, we conclude the district court did not err in awarding Mr. Walker consequential damages.

*Chevron USA, Inc.*, 315 F.3d 1245, 1267 (10th Cir. 2003), *petition for cert. filed*, 71 U.S.L.W. 3760 (U.S. Apr. 21, 2003) (No. 02-1758); *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995). We review for clear error the district court's findings of jurisdictional facts. *See Holt,* 46 F.3d at 1003.

Under the Colorado Governmental Immunity Act, "[n]o public entity shall be liable for [actions which lie in tort or could lie in tort] except as provided in this article." Colo. Rev. Stat. § 24-10-105 (2001). The Act defines a "public entity" as "the state, county, city and county, municipality, school district, special improvement district, and every other kind of district, agency, instrumentality, or political subdivision thereof organized pursuant to law and any separate entity created by intergovernmental contract or cooperation only between or among [public entities]." Colo. Rev. Stat. § 24-10-103(5) (2001) (amended 2002).

The Act also grants immunity to public employees "for injuries arising out of an act or omission occurring during the performance of his duties and within the scope of his employment, unless such act or omission was willful and wanton." *Id*. § 24-10-105. In relevant part, the Act defines a public employee as "an officer, employee, servant, or authorized volunteer of the public entity." *Id*. § 24-10-103(4)(a). Since the Act is "in derogation of the common law," we must

strictly construe it. *See Bertrand v. Bd. of County Comm'rs*, 872 P.2d 223, 225 (Colo. 1994).

Under the definition above, the Board does not qualify as a "public entity." It is not a "state, county, city and county, municipality, school district, special improvement district, [or any] other kind of district, agency, instrumentality, or political subdivision." *See* Colo. Rev. Stat. § 24-10-103(5). Nor was it "created by *intergovernmental* contract or cooperation *between* or *among* [public entities]." *Id*. (emphasis added). The Board was created through a collective bargaining agreement between the Regional Transportation District (a public entity), *see Brock v. Nyland*, 955 P.2d 1037, 1040 (Colo. 1998), and the Union (a non-public entity).

The Board argues it is an "instrumentality" of the Regional Transportation District and therefore "entitled to immunity" under the Act. Although the District may appoint some Board members, the pension plan specifically states "the Board and not the [District] shall have the responsibility for and the authority to manage the operation and administration of the Plan." Furthermore, Board members are obligated to act only in the interest of the plan and not the District. As a result of these considerations, we conclude the Board is not an "instrumentality" of the

District.

The Board also argues Board members are "public employees."  Since the Board is not a public entity, however, its members cannot be public employees in their capacity as Board members.  Without record support, the Board argues some of the Board members are public employees because they also work for the Regional Transportation District.  Even assuming some of the Board members also work for the District, their conduct as Board members does not "occur[] during the performance of [their] duties and within the scope of [their] employment" for the District.  Colo. Rev. Stat. § 24-10-105.  Their duties as Board members are distinct from whatever duties they may have as employees of the District.  Furthermore, they are being sued for their conduct as Board members and not for their conduct as employees of the District.  Board members therefore are not "public employees" within the meaning of the Act's immunity provisions.

Under the circumstances of this case, we conclude the Board is not a "public entity" and Board members are not "public employees" within the meaning of the Colorado Governmental Immunity Act; as a result, we conclude the district court correctly held they are not "entitled to immunity under the

[Act]."[2]

## B. Breach of Contract and Breach Fiduciary Duties

Messrs. Walker and Salazar subsequently moved the district court for summary judgment on its breach of contract and breach of fiduciary duty claims. The district court granted the motion. The court concluded the Board's decision to apply the 1998 amendment to Messrs. Walker and Salazar, thereby reducing their pension benefits, was arbitrary and capricious; the decision was contrary to the terms of the pension plan and the Board's fiduciary duties under the plan and common law. The Board argues on appeal the district court incorrectly granted summary judgment against it. We agree with the district court.

"We review the district court's grant of summary judgment on these claims de novo, applying the same legal standard used by the district court." *Simms v.*

---

[2] The Board also argues that because the district court concluded below its actions were "state actions" for purposes of Messrs. Walker and Salazar's 42 U.S.C. § 1983 claim, it must be a "public entity" under the Colorado Governmental Immunity Act. The district court dismissed the § 1983 claim on summary judgment, however, and Messrs. Walker and Salazar do not appeal the court's ruling. As the issue is not before us, we do not decide whether the Board's conduct is "state action" for purposes of § 1983. We also do not decide whether the district court erred in concluding the Board can engage in "state action" under § 1983 but nevertheless fail to qualify as a "public entity" under the Colorado Governmental Immunity Act.

*Oklahoma ex. rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir.), *cert. denied*, 528 U.S. 815 (1999). The plan in this case grants the Board discretion to "construe the Plan," to "correct any defects or supply any omission or reconcile any inconsistency" in the plan, and to make "such rules, regulations, interpretations, decisions, and benefit computations as may be necessary" for the plan. The plan prohibits the Board, however, from passing an amendment that would "decrease the accrued benefits of any Participant." Because the plan grants the Board with discretion, we should uphold the Board's decision unless it was arbitrary and capricious or an abuse of discretion.[3] *See Unisys Corp. v. Damon (In re Estate of Damon)*, 915 P.2d 1301, 1308 (Colo. 1996); *Hubbard v. Pueblo Firemen's Pension Fund*, 374 P.2d 492, 493 (Colo. 1962).

"A pension plan is a unilateral contract that creates a vested right in those employees who accept the offer it contains" by complying with the conditions imposed by the plan. *Pratt v. Petroleum Prod. Mgmt., Inc. Employee Sav. Plan & Trust*, 920 F.2d 651, 661 (10th Cir. 1990) (quotation marks and citation omitted).

---

[3] The Board believes the district court "either misapplied the arbitrary and capricious standard of review or actually applied a *de novo* standard of review." We disagree. The district court expressly stated it was applying an "arbitrary and capricious" standard of review, and we conclude it did not misapply this standard.

*See also Police Pension and Relief Bd. v. McPhail*, 338 P.2d 694, 700-02 (Colo. 1959); *McInerney v. Public Employees' Ret. Ass'n*, 976 P.2d 348, 352 (Colo. Ct. App. 1998). The trustee of a pension plan must determine an employee's benefits according to the plan in effect at his or her retirement. *See Pratt*, 920 F.2d at 661*; Boog v. Bradley, Campbell, Carney & Madsen, P.C. Defined Benefit Pension Plan & Trust,* 949 P.2d 96, 97 (Colo. Ct. App. 1997)*; Baker v. Sheet Metal Workers Local Union No. 9 Pension Trust Fund*, 669 P.2d 138, 140 (Colo. Ct. App. 1983). In addition, the trustee of a pension plan has a fiduciary duty, arising from the common law of trusts, to administer the plan in accordance with the terms of the plan.[4] *See Sinai Hosp. v. Nat'l Benefit Fund,* 697 F.2d 562, 566 (4th Cir. 1982); *see also United Mine Workers v. Robinson*, 455 U.S. 562, 573-74 (1982); Restatement (Second) of Trusts § 164 (1959). Once an employee retires, a trustee may not adopt an amendment that impairs an employee's vested rights under the plan: it is arbitrary and capricious, a breach of contract, and a breach of its fiduciary duties. *See Police Pension & Relief Bd. v. Bills*, 366 P.2d 581, 583-85 (Colo. 1961); *McPhail*, 338 P.2d at 700-02; *Boog*, 949 P.2d at 98. *See also United Mine Workers,* 455 U.S. at 573-74; *Pratt*, 920 F.2d at 661; *Sinai Hospital,* 697 F.2d at 566.

---

[4] The plan in this case also imposes on the Board a fiduciary duty to discharge its responsibilities "in accordance with the documents and instruments governing the Plan."

Under these principles, the Board cannot adopt an amendment that impairs Messrs. Walker and Salazar's vested pension benefits. It is obligated to provide pension benefits to Messrs. Walker and Salazar according to the plan in effect at the time of their respective retirements. It did not do so. We therefore conclude, like the district court, the Board acted arbitrarily and capriciously and breached its contract and fiduciary duties by applying the 1998 amendment to Messrs. Walker and Salazar. *See Baker*, 669 P.2d at 140 ("The trustees of a pension plan act arbitrarily and capriciously when they act so as to contravene the express language of the plan they are charged with administering.").

The Board seeks to justify its conduct by arguing it adopted the 1991 amendment in error. It argues the definition of "final average earnings" in the 1991 amendment was inconsistent with other provisions of the plan and the plan's purpose. According to the Board, it corrected this inconsistency by adopting the 1998 amendment and applying it to Messrs. Walker and Salazar. We reject the Board's argument. The Board did not adopt the 1991 amendment in error.

The Board adopted the 1991 amendment to facilitate, and to avoid discouraging, the transfer of employees between covered Union positions and non-covered management positions. The Board was concerned some employees

-13-

did not want to make such transfers in fear they would be "disadvantaged" in their retirement plan. The Board resolved this concern in the 1991 amendment by defining the term "final average earnings" to include an employee's highest sixty months of earnings in either covered or non-covered positions.

The Board believes the definition of "final average earnings" in the 1991 amendment is inconsistent with the language of section 3.04 of the plan. We disagree. The plan requires plan participants to have at least ten years of "Credited Service," *i.e.*, ten years of continuous employment, to receive a regular retirement benefit. As the number of years of "Credited Service" increases, so does the amount of the regular retirement benefit (based on a percentage of final average earnings). Section 3.04 of the plan clarifies an employee's non-covered employment "shall be counted as Continuous Employment for purposes of Vesting and participation, but not for determining the amount of Credited Service for benefit accrual purposes." This section confirms an employee who transfers to non-covered employment will retain his Credited Service "to the date of such transfer." Essentially, section 3.04 addresses the purposes for which the Board will treat non-covered employment as continuous employment; it does not address whether the Board should include non-covered employment in the final average earnings calculation. As a result, we see nothing in section 3.04 that is

-14-

inconsistent with the definition of "final average earnings" in the 1991 amendment.

The Board argues the 1991 amendment of "final average earnings" is also inconsistent with the definition of "Earnings" in the plan. Again, we fail to see the inconsistency. The plan defines "Earnings" as the "total non-deferred cash compensation paid [to an employee] in any Plan Year." The amount of an employee's "Earnings" is used to determine the amount (based on a percentage of "Earnings") an employee must contribute to the trust that funds the plan. An employee's "final average earnings," on the other hand, is used to determine the amount of the employee's actual retirement benefit. Since these two terms deal with different issues, it was not inconsistent for the Board to define one differently from the other.

The Board briefly mentions the definition of "final average earnings" in the 1991 amendment is also "inconsistent with the underlying purpose of the Plan." It argues, without support, the purpose of the plan is "to provide retirement benefits to union member employees for work performed while those employees are covered by collective bargaining agreements between [the District] and the Union." Even assuming this is the plan's purpose, we do not believe it

-15-

inconsistent with that purpose to include the amount earned in non-covered employment as part of the benefit calculation, especially when the plan also uses (even under the 1998 amendment) periods of non-covered employment to determine "Vesting and participation."

The Board's attempt to justify its conduct by questioning the validity of the 1991 amendment fails. The 1991 amendment was a reasonable and good faith interpretation of the plan.[5] As the 1991 amendment was in effect at the time of their retirements, Messrs. Walker and Salazar each have a vested right to receive benefits in accordance with its definition of "final average earnings." The Board cannot act to impair or eliminate these vested rights; the Board's attempt to do so is arbitrary and capricious, a breach of contract, and a breach of its fiduciary duties under the plan and the common law of trusts.

The Board argues in the alternative it cannot be liable for breaching its fiduciary duties because it acted in good faith and relied on the advice of counsel.

---

[5] A portion of the district court's decision suggests the definition of "final average earnings" in the 1998 amendment is an unreasonable interpretation of the plan. It is unnecessary for us to reach this question. Even if the definition in the 1998 amendment is a more reasonable interpretation of the plan than the one in the 1991 amendment, the Board may not apply this new definition to Messrs. Walker and Salazar to reduce their vested pension benefits.

We disagree.  Good faith and reliance on the advice of counsel are not defenses where, as here, a trustee believes in error the plan authorized its conduct.  *See Morgan v. Indep. Drivers Ass'n Pension Plan*, 975 F.2d 1467, 1470 (10th Cir. 1992) (citing Restatement (Second) of Trusts § 201 cmt. b)*; Franzen v. Norwest Bank Colorado (In re Trust of Franzen)*, 955 P.2d 1018, 1022 (Colo. 1998) (noting "good faith reliance on the advice of counsel is not a defense to liability for a breach of duty").  Under Colorado law and the express language of the plan in this case, the Board is not authorized to pass an amendment that impairs a vested pension benefit.[6]  *See Pratt*, 920 F.2d at 661*; Bills*, 366 P.2d at 583-85; *McPhail*, 338 P.2d at 700-02; *Boog*, 949 P.2d at 97-98.  In any event, as discussed below, we conclude the Board did not act in good faith reliance on the advice of counsel in deciding the 1991 amendment was an error and in applying the 1998 amendment to Messrs. Walker and Salazar.

In sum, we conclude the district court properly granted Messrs. Walker and Salazar's motion for summary judgment on their claims for breach of contract and breach of fiduciary duties under the plan and the common law of trusts.

---

[6]  As discussed above, the plan authorizes the Board to amend the plan "at any time" and to "reconcile any inconsistency," but it expressly prohibits the Board from passing an amendment that would "decrease the accrued benefit of any Participant."

## C. Colorado's Survival Statute

While the parties were litigating this case in district court, Mr. Salazar died. Mr. Salazar's wife, Mrs. Salazar, moved the district court to substitute her as a plaintiff in her capacity as executor of Mr. Salazar's estate. The district court granted the motion. The Board subsequently argued before the district court that Colorado's "Survival Statute bars [Mr. Salazar's estate] from recovering damages for Mr. Salazar's emotional distress because Mr. Salazar's breach of fiduciary duty claim sounds in tort and is based upon personal injuries." The district court agreed, holding Mr. Salazar's estate could not recover emotional distress damages on its breach of fiduciary duty claim; however, the district court also concluded the estate could recover emotional distress damages on its willful and wanton breach of contract claim.

The Board argues on appeal the district court erred in allowing the estate to recover emotional distress damages on its willful and wanton breach of contract claim. It believes Colorado's "Survival Statute should also bar [the estate's] breach of contract claim for emotional distress damages." We review this question of law de novo. *See Dang v. UNUM Life Ins. Co. of Am.*, 175 F.3d 1186, 1189 (10th Cir. 1999).

In "tort actions based upon personal injury," Colorado's survival statute prohibits the recovery of "damages for pain, suffering, or disfigurement" following the death of the person so injured. Colo. Rev. Stat. § 13-20-101(1) (1997). The statute "is in derogation of the common law and thus must be strictly construed." *Estate of Burron v. Edwards*, 594 P.2d 1064, 1065 (Colo. Ct. App. 1979).

Since the statute prohibits recovery of "damages for pain, suffering, or disfigurement" only in "tort actions," the plain language of the statute does not bar Mr. Salazar's estate from recovering damages for Mr. Salazar's emotional distress under a willful and wanton breach of *contract* claim. *See* Colo. Rev. Stat. § 13-20-101(1). The Board argues as significant, however, emotional distress damages can also be recovered in tort actions. It claims "the very nature of the emotional distress damages is tort-based." It claims we should interpret the survival statute to bar emotional distress damages in all cases. We disagree. The Board's argument ignores the plain language of the statute.[7] We therefore

---

[7] The Board also argues the economic loss rule is analogous to the facts of this case and should prevent Mr. Salazar's estate from recovering emotional distress damages on its willful and wanton breach of contract claim. Under Colorado law, the economic loss rule prevents "a party suffering only economic loss from the breach of an express or implied contractual duty ... [from] asserting a tort claim for such a breach absent an independent duty of care under tort law." *Town of Alma v. Azco Constr., Inc.*, 10 P.3d 1256, 1264 (Colo. 2000). The economic loss rule does not operate to prevent an

conclude the district court did not err in allowing Mr. Salazar's estate to recover emotional distress damages on its willful and wanton breach of contract claim.

### D. Colorado's Dead Man's Statute

After Mr. Salazar's death, the Board also moved the district court under Colorado's dead man's statute to exclude testimony by Mrs. Salazar about Mr. Salazar's emotional distress. The district court denied the motion. Mrs. Salazar thereafter testified at trial on behalf of Mr. Salazar's estate about Mr. Salazar's emotional distress. The Board argues on appeal Colorado's dead man's statute prohibits her testimony. We review this question of law de novo. *See Dang*, 175 F.3d at 1189.

Under Colorado law, there is a general presumption that "[a]ll persons" are competent to testify, including those "who have an interest in the event of an action or proceeding." Colo. Rev. Stat. § 13-90-101 (1997). *See also Breeden v. Stone*, 992 P.2d 1167, 1174 (Colo. 2000). Of course, this general presumption is subject to some exceptions, including the dead man's statute. The dead man's statute prohibits, in relevant part, the testimony of a "person directly interested in

---

individual from bringing a contract action; it only prevents an individual from bringing a tort action for economic loss arising from a breach of contract. Accordingly, the rule does not apply to the estate's willful and wanton breach of contract claim.

the event [of a civil action, suit, or proceeding] when any adverse party sues or defends ... as the executor or administrator, heir, legatee, or devisee of any deceased person." Colo. Rev. Stat. § 13-90-102(1) (1997) (repealed and reenacted 2002). In other words, a person directly interested in an action is incompetent to testify if "his testimony is being offered against an heir, legatee, devisee, or other person listed in the statute." *Breeden*, 992 P.2d at 1175 (Colo. 2000).

As mentioned above, Mrs. Salazar testified *on behalf* of the estate about Mr. Salazar's emotional distress. Even though she had a direct interest in the outcome of the litigation as the sole heir to her husband's estate, the dead man's statute did not prohibit her testimony because she did not testify "*against*" the estate. *Breeden*, 992 P.2d at 1175 (emphasis added). The estate was not an "adverse party" in relation to Mrs. Salazar. *See* Colo. Rev. Stat. § 13-90-102(1). Accordingly, the district court did not err in allowing her testimony.[8]

---

[8] The Board argues Mrs. Salazar's testimony was "extremely prejudicial to the Board because the Court based its award for emotional distress damages on her testimony." The Board believes such "testimony is precisely the type the Dead Man's Statute was intended to prohibit." While Mrs. Salazar's testimony may have been unfavorable to the Board, we nevertheless disagree with the Board, as discussed above, that the dead man's statute prohibits her testimony.

### E. Willful and Wanton Breach of Contract

The Board argues the district court improperly admitted hearsay evidence at trial in support of Mr. Walker's and Mr. Salazar's estate's willful and wanton breach of contract claims. Absent this evidence, the Board believes there is no evidence in the record to support the court's finding the Board acted willfully and wantonly. Even if the district court properly admitted this evidence, the Board still believes the evidence does not demonstrate the Board acted willfully and wantonly.

We first address whether the district court properly admitted the challenged evidence. "Evidentiary decisions rest within the sound discretion of the trial court, and we review those decisions only for an abuse of that discretion. Our review is especially deferential when the challenged ruling concerns the admissibility of evidence that is allegedly hearsay." *United States v. Tome*, 61 F.3d 1446, 1449 (10th Cir. 1995) (citation omitted). "[W]e consider the record as a whole in reviewing evidentiary rulings." *United States v. Cestnik*, 36 F.3d 904, 907 (10th Cir. 1994).

The government argues the district court erred in admitting tape recordings and transcripts of two Board meetings. At one meeting in 1995, the Board

-22-

reviewed an actuarial evaluation of the plan and discussed why the evaluation included, as an actuarial assumption, the change in an employee's pay when he transferred between a covered Union position and a non-covered management position. At another meeting in 1998, the Board discussed in detail the reasons underlying its adoption of the 1991 and 1998 amendments and the consequences of applying the 1998 amendment to existing retirees like Messrs. Walker and Salazar.

The district court admitted the tape recordings and transcripts of these meetings in part, despite the Board's hearsay objection, because the excerpts and recordings "reflect[ed] knowledge on the part of identified named defendants," and "knowledge, of course, is an integral factor of the willful, wanton analysis." An out-of-court statement is not hearsay, and a district court may properly admit it "if the statement is offered not for the truth of the matter asserted in the statement but merely to show that a party had knowledge of a material fact or issue." *Echo Acceptance Corp. v. Household Retail Servs., Inc.*, 267 F.3d 1068, 1090 (10th Cir. 2001); *see also* Fed. R. Evid. 801(c). We agree with the district court that the tape recordings and transcripts discussed above are evidence of the Board's knowledge of facts material to this case; as a result, we conclude the district court did not abuse its discretion in admitting the recordings and

transcripts for this purpose.

The Board cites a specific portion of the district court's decision to demonstrate the court erroneously admitted certain statements of the Board's attorney (during a Board meeting) for the truth of the matter asserted. It quotes the following passage from the district court's decision:

> And this was the meeting where Mr. Parsons advised the board to take comfort in the inability of these people to find a lawyer. "And even if they did, if there is a lawsuit, we'll try to get every penny back that we paid them over and above what Amendment 9 would otherwise allow."
>
> You know what that was? "I dare you to sue me."

The district court found the evidence quoted above, along with other evidence, demonstrated "willful and wanton conduct. It is probative of such conduct." This portion of the district court's decision paraphrases two separate statements. We will examine each statement individually and determine whether the court properly admitted it.

The Board's attorney made one of the statements at the Board meeting in 1998 during a discussion about whether to apply the 1998 amendment to existing retirees. He stated:

> And also, you know, from just the frankness of the economics of it, I think the participants are going to have a hell of a time finding an

attorney who's going to take the case, because there is no fee shifting provision in Colorado.

The district court did not abuse its discretion in admitting this statement as evidence of the Board's knowledge of the consequences of its decision to apply the 1998 amendment to Messrs. Walker and Salazar. The district court did not admit the statement for the truth of the matter asserted: Mr. Walker and Mr. Salazar's estate were not seeking to prove that Messrs. Walker and Salazar had a hard time finding an attorney; instead, they were seeking to prove that the Board acted willfully and wantonly in breaching its contract.

The Board made the second statement in a letter it sent to both Messrs. Walker and Salazar informing them of its decision to apply the 1998 amendment to them. It read:

> Please be advised that, if you decide to file a lawsuit against the Board of Trustees, the Board of Trustees will file a counterclaim against you for recovery of the full amount of any overpayments of pension benefits.

The district court did not abuse its discretion in admitting this statement. Mr. Walker and Mr. Salazar's estate offered this statement against the Board, and the Board itself made the statement. It is therefore an admission by a party-opponent, and, as such, it is not hearsay. *See* Fed. R. Evid. 801(d)(2)(A).

We next address whether the evidence supports the district court's finding the Board willfully and wantonly breached its contract with Messrs. Walker and Salazar. Under Colorado law, "a willful-and-wanton breach of contract [is] one that is intentional, and without legal justification or excuse." *Giampapa v. American Family Mut. Ins. Co.*, 64 P.3d 230, 244 (Colo. 2003) (quotation marks and citation omitted). The Board argues it "did not act willfully and wantonly because it acted with legal justification and lacked the requisite intent." We review for clear error the district court's factual findings. *See* Fed. R. Civ. P. 52(a). *See also Giampapa*, 64 P.3d at 243 (treating the willful and wanton conclusion as a finding of fact). "A finding of fact is clearly erroneous if it is without factual support in the record or if [we], after reviewing all the evidence, [are] left with a definite and firm conviction that a mistake has been made." *Manning v. United States*, 146 F.3d 808, 812 (10th Cir. 1998) (quotation marks and citation omitted).

The Board argues generally there is no evidence "in the record, either direct or circumstantial, that the Board intended to breach a contract." The Board argues as significant it "went to great lengths to discuss, debate and consider its decision to adopt [the 1998 amendment]." The Board's argument does not address, however, whether the Board intentionally breached its contract. The

-26-

district court made several findings of fact demonstrating the Board knew Messrs. Walker and Salazar had vested pension benefits under the definition of "final average earnings" in the 1991 amendment. The district court also made findings showing the Board knew it did not adopt the 1991 amendment in error, and, in spite of this knowledge, it applied the 1998 amendment to Messrs. Walker and Salazar and denied their appeals based on its non-credible claim the 1991 amendment was an error. These factual findings are supported by the record and further support the court's finding that the Board's breach was "purposeful[]" or intentional.

The Board also argues there is no evidence in the record "demonstrating that the Board acted without legal justification or excuse." It claims it "sought the advice of legal counsel, evaluated its options and acted in accordance with that advice." We disagree. The Board's attorney advised the Board that *if* the 1991 amendment was adopted in error, its application of the 1998 amendment to existing retirees *may* survive judicial scrutiny; however, the Board points to no evidence indicating its attorney advised the Board it adopted the 1991 amendment in error. Furthermore, the district court found the Board "knew [the 1991 amendment] was no mistake. And the claim that it was an error or mistake or that there were conflicts in provisions is not credible." As a result of these

considerations, we conclude the district court correctly found the Board did not rely on its attorney's advice, or act with legal justification, when it claimed the 1991 amendment was a mistake and applied the 1998 amendment to Messrs. Walker and Salazar.

In sum, we conclude the district court did not abuse its discretion in admitting the evidence the Board objected to as hearsay. We also conclude the record supports the district court's findings that the Board intentionally breached its contract and, in so doing, acted without legal justification or excuse. The district court therefore did not commit clear error in finding the Board's breach of contract was willful and wanton.

### III. Conclusion

For the reasons discussed above, we **AFFIRM** the judgment of the district court. We grant Mr. Walker's and Mr. Salazar's estate's request for attorney's fees on appeal and **REMAND** to the district court for the limited purpose of determining the proper amount. *See, e.g., Buder v. Sartore*, 774 P.2d 1383, 1391 (Colo. 1989).

**Entered by the Court:**

**WADE BRORBY**
United States Circuit Judge
